OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

U.S. Sprint Communications Company Limited Partnership, Appellant, v. Mr. K's Foods, Inc., Appellee.
[Cite as U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc. (1994),     Ohio St.3d     .]
Civil procedure -- Personal jurisdiction -- Once Ohio court acquires personal jurisdiction over nonresident defendant for claims arising in Ohio, Civ.R. 18(A) permits joinder of related claims that do not arise in Ohio, when.
Once an Ohio court acquires personal jurisdiction over a nonresident defendant for claims arising in Ohio, Civ. R. 18(A) permits joinder of related claims that do not arise in Ohio, as long as granting jurisdiction for all claims does not deprive defendant of the right to due process of law.
(No. 92-1804 -- Submitted September 29, 1993 -- Decided January 26, 1994.)
Appeal from the Court of Appeals for Franklin County, No. 91AP-1131.

In this case we are presented with an opportunity to further define when an Ohio court may properly assert personal jurisdiction over a nonresident defendant for claims arising in and outside Ohio.

On August 24, 1989, appellant, U.S Sprint Communications Company Limited Partnership ("U.S. Sprint"), a telecommunications company headquartered in Kansas City, Missouri, filed a complaint in Franklin County Common Pleas Court against appellee, Mr. K's Foods, Inc., a food manufacturing company located in Buffalo, New York.

Mr K's manufactures pizza products and cookies for wholesale distribution and for home delivery. The company's home delivery division supplies these goods to independent distributors located in various states including Ohio. Mr. K's makes phone calls to the distributors, and the distributors place orders and receive deliveries from Mr. K's.

Mr. K's maintains no offices or employees outside Buffalo. Instead, sales are generated by an extensive telemarketing operation. Mr. K's Foods telemarkets in New York state through its office in Buffalo, and in other states

through independent distributors.  In Ohio, two of Mr. K's distributors were Mr. K's Distribution and Sales of Columbus, Inc. and Mr. K's Distribution and Sales of Cleveland, Inc.  The president of Mr. K's, Anthony Korobellis, who wholly owned the stock of these latter two companies, incorporated them to take over failing affiliated independent distributors.1

U.S. Sprint's complaint arises from several long distance telephone contracts arranged between U.S. Sprint and a number of Mr. K's  independent distributors.  It alleges that Mr. K's Foods owes U.S. Sprint $155,307.58 plus interest for unpaid long distance telephone service on seventeen accounts ordered by Mr. K's. Mr. K's argues that these accounts were the responsibility of the independent distributors which had no formal affiliation with Mr. K's.  Of the seventeen accounts, the record indicates that six were located in Ohio, one in Pennsylvania and the remaining ten in New York.  The unpaid bills for the six Ohio accounts totaled $6,194.11.

A copy of the complaint was served on Korobellis in Buffalo, New York.  When Mr. K's failed to respond, U.S. Sprint moved for a default judgment.  On December 19, 1989, the trial court granted the motion and awarded U.S. Sprint $155,307.58 plus interest and costs.

Mr. K's filed a motion for relief from judgment arguing the decision was void because the trial court lacked personal jurisdiction, or, alternatively, for relief from judgment pursuant to Civ. R. 60(B).  On May 3, 1990, the trial court overruled the motion and concluded Mr. K's did "do business" in Ohio sufficient to invoke the state's "long-arm" statute.  The court of appeals reversed this decision and remanded the case for an evidentiary hearing, ruling that, because there were numerous factual issues that should have been resolved at trial level, the trial court erred in finding Mr. K's subject to personal jurisdiction.

On remand and following the prescribed evidentiary hearing, the trial court again found Mr. K's had submitted to Ohio jurisdiction and entered judgment for U.S. Sprint in the original amount of $155,307.58 plus ten percent interest and costs.  Mr K's appealed for a second time, and once more the court of appeals reversed the trial court.  The appeals court, after closely examining the record, found "that a separate cause of action exists for each account which [U.S. Sprint] has identified in its complaint.  Personal jurisdiction must be determined separately for each account."  The court concluded that the eleven phone accounts located outside Ohio were not subject to Ohio's "long-arm" statute, and then remanded the case to the trial court to determine whether "long-arm" jurisdiction may be extended over Mr. K's for the remaining six accounts which were located in Ohio.  The court further stated that a finding of personal jurisdiction must be made individually for each account.

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Donnamarie Landsberg, for appellant.

Wright, J.  The question before us today is whether an Ohio court may exercise personal jurisdiction over a foreign

corporation in order to adjudicate seventeen separate but similar causes of action, when only six of those causes of action arose in Ohio. For the reasons stated below we reverse the court of appeals and hold that the trial court had an adequate basis upon which to properly assert in personam jurisdiction over the defendant for all seventeen causes of action.

When determining whether a state court has personal jurisdiction over a foreign corporation the court is obligated to engage in a two-step analysis. First, the court must determine whether the state's "long-arm" statute and applicable civil rule2 confer personal jurisdiction, and, if so, whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. Fallang v. Hickey (1988), 40 Ohio St. 3d 106, 532 N.E. 2d 117; Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc. (1990), 53 Ohio St. 3d 73, 559 N.E.2d 477.

I

In ruling that the trial court did not have personal jurisdiction over eleven of seventeen causes of action, the court of appeals based its decision on Ohio's "long-arm" statute, R.C. 2307.382. That law defines the specific activities for which a foreign corporation may become subject to a judgment in personam in an Ohio court. It states in relevant part:

"(A)  A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1)  Transacting any business in this state;

"***

"(C)  When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."

Mr. K's Foods, relying on R.C. 2307.382(C), argued below that if a court bases personal jurisdiction on R.C. 2307.382(1)(A), then it may only entertain those causes of action that arise from the company "[t]ransacting any business" in Ohio. While Mr. K's maintained the company has no responsibility for the unpaid telephone bills of any of its distributors, it argued that, in any event, the trial court could only exercise jurisdiction over the six Ohio accounts totaling $6,194.11.3  Mr. K's claimed further that because the remaining eleven accounts had no connection with Ohio and therefore did not "arise from" Mr. K's "[t]ransacting any business" in Ohio, the court improperly asserted jurisdiction and thus the default judgment with respect to these accounts is void ab initio. Consequently, Mr. K's urged, $149,113.47 of U.S. Sprint's $155,307.58 default judgment award must be set aside. We disagree.

Under R.C. 2307.382(A)(1), a foreign corporation submits to the personal jurisdiction of an Ohio court if its activities lead to "[t]ransacting any business" (emphasis added) in Ohio. Because it is such a broad statement of jurisdiction, R.C. 2307.382(A)(1) has given rise to a variety of cases which "have reached their results on highly particularized fact situations, thus rendering any generalization unwarranted."  22 Ohio

Jurisprudence 3d (1980) 430, Courts and Judges, Section 280. With no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case determination.

For purposes of personal jurisdiction, this court has long held the mere solicitation of business by a foreign corporation does not constitute transacting business in Ohio. Wainscott v. St. Louis-San Francisco Ry. Co. (1976), 47 Ohio St.2d 133, 1 O.O.3d 78, 351 N.E.2d 466. Instead, as the United States Supreme Court has stated, a nonresident's ties must "create a 'substantial connection' with the forum State." Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528, 542.

It is clear from the record that Mr. K's Foods solicited business in Ohio. The company frequently made long distance telephone calls to Ohio to sell its products on behalf of its home delivery division. Furthermore, the facts also indicate that independent distributors located in Ohio placed orders for pizza and cookies with Mr. K's in Buffalo, which then shipped these goods to Ohio for ultimate sale here. This same pattern of operation was repeated between Buffalo and New York State, Pennsylvania, Delaware, Michigan and Illinois. In all instances U.S. Sprint provided the long distance telephone service. And while Mr. K's denies any formal affiliation with the independent contractors, its long distance phone service with U.S. Sprint was ordered, not by the distributors, but by Anthony Korobellis, president of Mr. K's Foods. The subject of this suit is the breach of contract between U.S. Sprint and Mr. K's Foods due to unpaid telephone accounts for long distance charges made in Ohio and elsewhere.

From this record it is abundantly clear that Mr. K's Foods was "[t]ransacting any business in this state" within the plain meaning of R.C. 2307.382(A)(1). Once it has been determined the defendant is transacting business in Ohio pursuant to the "long-arm" statute, a court may accordingly exercise jurisdiction over the defendant. The court need not exercise personal jurisdiction over each claim. We hold that once an Ohio court acquires personal jurisdiction over a nonresident defendant for claims arising in Ohio, Civ. R. 18(A) permits joinder of related claims that do not arise in Ohio, as long as granting jurisdiction for all claims does not deprive defendant of the right to due process of law. Civ. R. 18(A) states: "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party."

The language in R.C. 2307.382(C) limiting causes of action against a defendant to those "arising from acts enumerated in this section" applies only when "jurisdiction over a person is based solely upon this section." Because of Mr. K's continuous and systematic contacts with the state of Ohio, we do not base our decision solely upon Ohio's "long-arm" statute but also upon a due-process, minimum-contacts analysis discussed infra. Thus we find that R.C. 2307.382(A)(1) authorizes an Ohio court to exercise personal jurisdiction over a foreign corporation in order to settle the unpaid long distance telephone service

bills owed to another nonresident when a significant number of the charges arose in Ohio and goods were shipped into the state as a result. Moreover, we hold that R.C. 2307.382(C) is not a bar to permitting the court from adjudicating the related unpaid long distance telephone bills that did not arise in Ohio.

## II

The second step of our two-step analysis requires us to examine whether the exercise of personal jurisdiction here comports with due process of law under the Fourteenth Amendment to the United States Constitution.

The United States Supreme Court has held that in order for a state court to subject a foreign corporation to a judgment in personam, the corporation must "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'***" (Citations omitted.) Internatl. Shoe Co. v. Washington (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.E. 95, 102. In formulating this rule, the United States Supreme Court emphasized that the analysis "cannot simply be mechanical or quantitative," but rather whether due process is satisfied depends "upon the quality and nature of the activity." Id. at 319, 66 S.Ct. at 159-160, 90 L.E. at 103-104..

This concept of minimum contacts serves two functions. First, it protects the nonresident defendant "against the burdens of litigating in a distant or inconvenient forum." World-Wide Volkswagen Corp. v. Woodson (1980), 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498. Second, it ensures that the states do not encroach on each other's sovereign interests. Id.

Under the International Shoe doctrine, a nonresident corporation submits to a state's personal jurisdiction when the activities of the company within the state are systematic and continuous. International Shoe at 319, 66 S.Ct. at 159, 90 L.E. at 103. And while the casual presence of a corporate agent or a single or isolated act is not enough, "other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit." Id. "Thus where the defendant 'deliberately' has engaged in significant activities within a State ***, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumtively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Burger King Corp., supra at 475-476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543. The Ohio Supreme Court adopted the basic principle of International Shoe in Wainscott v. St. Louis-San Francisco Ry. Co., supra, at syllabus, stating due process is satisfied when "a foreign corporation has certain minimum contacts with Ohio such that it is fair that a defendant defend a suit brought in Ohio and that substantial justice is done."

Although Mr. K's Foods maintained no offices or agents in Ohio, the company clearly had an active business presence within the state. The record before the court leaves no doubt that Mr. K's purposely directed its business toward Ohio, establishing a clear pattern of systematic and continuous

contacts.  From Buffalo, New York, the company recruited a substantial network of independent distributors in Ohio and elsewhere.  Mr. K's supplied wholesale food products to its distributors for ultimate sales in at least six states, including Ohio.  At the retail end, the distributors operated an extensive telemarketing network, calling Ohio residents to purchase pizza and cookies on behalf of organizations such as the Leukemia Society.  The unpaid long distance charges at issue here were the result of these telemarketing campaigns.  While Mr. K's insists its relationship with the independent contractors is arm's length, it is not disputed that Anthony Korobellis, president of Mr. K's Foods, ordered their long distance phone service with U.S. Sprint.  It is also not in dispute that Korobellis was the sole shareholder of three independent distributors, two of which operated in Ohio.  The preceding analysis leaves no question that Mr. K's activities are sufficient to satisfy the minimum contacts standard of International Shoe.

Following the minimum-contacts inquiry, in appropriate cases the court must also evaluate both the burden on the defendant of litigating in a distant forum and the interest of the forum state in settling the dispute.  Burger King Corp., supra, at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 543.  "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."  Id. at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 543-544.  However, "because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity."  (Citation omitted.) Id. at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 541.  Inasmuch as Mr. K's routinely transacted business in Ohio, we find that requiring the company to litigate this case in Ohio posed no excessive burden to the defendant.

An interesting aspect of this case that compels Ohio jurisdiction is the nature of the causes of action.  We are not dealing with defective goods being shipped into the state by nonresidents.  Instead, the court is presented with several causes of action between two nonresidents regarding unpaid long distance telephone accounts -- six of these arose in Ohio, eleven did not.  The subject of the breach of contract is the unpaid long distance charges themselves.  It is significant that the seventeen causes of action arose from the mode of communication used by Mr. K's Foods to solicit business.4 Aside from points of origination and destination, the telephone service of all seventeen delinquent accounts is indistinguishable.  If these claims are not permitted to be litigated in one forum, the parties would be forced to relitigate virtually the same facts and circumstances in several forums, possibly with different outcomes.  It is the very nature of and the factual similarity among all seventeen causes of action that give rise to the court's interest in litigating them all in one forum.  See Chambers v. Merrell-Dow Pharmaceuticals, Inc. (1988), 35 Ohio St. 3d 123, 519 N.E.2d 370.

From the foregoing analysis we can only conclude that, in accordance with due process, the trial court properly subjected Mr. K's Foods to a judgment in personam over all claims. Thus, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Judgment reversed.

Moyer, C.J., A.W. Sweeney, Douglas, Blackmon and F.E. Sweeney, JJ., concur.

Pfeifer, J., dissents.

Patricia A. Blackmon, J., of the Eighth Appellate District, sitting for Resnick, J.

FOOTNOTES:

1  Korobellis also owned all the shares of a third distributor, Mr. K's Distribution and Sales of Rochester, Inc.

2  In Kentucky Oaks Mall Co. v. Michell's Formal Wear, Inc. (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 479, the Ohio Supreme Court found the two to be coextensive, holding "that the statute and civil rule are consistent and in fact complement each other."

3  Since the original complaint resulted in a default judgment, the question of whether Mr. K's Foods is responsible for the seventeen unpaid accounts is foreclosed.  Instead, the court must decide the number of these accounts upon which U.S. Sprint may obtain a judgment in Ohio courts.

4  In fact, because the causes of action arose from the mode of communication Mr. K's used in soliciting business, it may be possible that mere solicitation is indeed considered "[t]ransacting any business," obviating the need to look for more consequential ties.

Pfeifer, J., dissenting.   I dissent from the majority's decision because it is untrue to Ohio's long-arm statute and will result in an increase in forum shopping.

Ohio's long-arm statute extends personal jurisdiction "as to a cause of action arising from the person's * * * (t)ransacting any business in this state." (Emphasis added.) R.C. 2307.382.  That is, personal jurisdiction is extended on a cause-of-action basis.  I do not agree with the majority that once long-arm jurisdiction attaches to one cause of action that Civ. R. 18 allows joinder of other claims that did not arise in Ohio.  That holding is contrary to the language of R.C. 2307.382(C): "When jurisdiction over a person is based solely upon this section, only a cause of action arising from the acts enumerated in this section may be asserted against him." (Emphasis added.)  There has been no evidence presented that Mr. K's eleven telephone accounts in New York and Pennsylvania arose from Mr. K's doing business in Ohio.

The facts of this case demonstrate that forum shopping is the sole reason for appellant's filing in Ohio.  Appellant's in-house counsel acknowledged in oral argument that Sprint -- headquartered in Kansas City --  sued Mr. K's in Ohio because Sprint's counsel was admitted to practice in Ohio, but not in New York, where Mr. K's is headquartered.  Sprint did not want to incur the expense of hiring outside counsel.

This case was brought in Ohio for all the wrong reasons. The majority decision encourages litigants to forum shop in the

future for causes of action without connection to Ohio.