OPINION
This is an accelerated appeal taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Joseph Durkin, appeals from the trial court's dismissal of his action to enforce a default judgment obtained in Missouri on the ground that the Missouri court lacked personal jurisdiction over appellees, Gran Turismo Jaguar and Lou Fidanza.
Appellant is a resident of Missouri. At all times relevant to the instant matter, appellant owned a 1987 Jaguar convertible ("the Jaguar"). Gran Turismo Jaguar ("Gran Turismo"), an Ohio corporation whose principal place of business is in Perry Village, Ohio, engages in the sale of Jaguar parts and the service of Jaguar automobiles. In furtherance of its business, Gran Turismo advertises its automotive supplies and services in magazines with a nationwide area of distribution, including Missouri. Lou Fidanza ("Fidanza") is a corporate officer of Gran Turismo.
In May 1994, appellant saw one of Gran Turismo's magazine advertisements. He contacted the business in order to inquire whether it could perform certain maintenance on the Jaguar. Following their initial discussions, Gran Turismo sent appellant a written estimate and offer to contract for the cost of rebuilding the Jaguar's engine and other designated services. Appellant accepted the offer and had the Jaguar shipped from Missouri to Ohio along with a $6,000 down payment to be applied toward the cost of the automotive work.
After the Jaguar arrived in Ohio, Gran Turismo commenced the process of rebuilding the engine and performing the other repairs. Subsequently, from June 1994 through July 1995, Gran Turismo sent a variety of correspondence to appellant in Missouri via the mail and facsimile. The purpose of the correspondence was to keep appellant abreast of the progress being made on the Jaguar. In some of these letters, Gran Turismo suggested that appellant have various other repairs made to the ignition and fuel injection systems. Appellant agreed to the additional work and paid over $14,000 more to Gran Turismo.
In July 1995, appellant traveled to Ohio after being informed that the Jaguar was ready to be picked up. Upon inspecting the car, however, appellant expressed extreme dissatisfaction with the quality of the work and claimed that the Jaguar had been damaged while it was at Gran Turismo's facility. As a result, appellant demanded that additional repairs be made before he would retake possession of the Jaguar.
Gran Turismo refused to perform some of the work that appellant demanded, including the repair of the air conditioning system. In September 1995, Gran Turismo shipped the Jaguar back to appellant in Missouri.
Thereafter, on May 13, 1996, appellant filed a lawsuit against Gran Turismo in the Circuit Court of Jackson County, Missouri ("the Missouri court"). In his petition for damages, appellant asserted causes of action for breach of contract, negligence, fraud, fraudulent concealment, conversion, and violation of Ohio's Consumer Protection Act. Although served with summons, neither Gran Turismo nor Fidanza filed an answer or otherwise appeared in response to the lawsuit. Appellant moved for default judgment, and a copy of an interlocutory default order was mailed to both defendants.
The Missouri court held a hearing at which it heard testimony and received evidence regarding the damages that appellant suffered as a result of the defendants' conduct. On December 20, 1996, the court entered a default judgment against Gran Turismo and Fidanza in the amount of $140,629.61, which included treble damages and attorney fees. In its judgment entry, the Missouri court expressly noted that Gran Turismo and Fidanza were personally subject to the court's jurisdiction because they "entered into contracts in Missouri, have transacted business in Missouri and have committed tortious acts that have caused injury in Missouri to Plaintiff, a Missouri resident."
On March 12, 1997, appellant brought an action to enforce the foreign judgment pursuant to R.C. 2329.021 et seq. by filing an authenticated copy of the judgment in the Lake County Court of Common Pleas ("the trial court"). Upon receiving notice, Gran Turismo and Fidanza responded by filing a motion to dismiss the foreign judgment. The basis of the motion was that neither Gran Turismo nor Fidanza had any contacts with the state of Missouri, thereby precluding the Missouri court from exercising personal jurisdiction over them. Both sides filed memorandums of law regarding whether the Missouri judgment was void for lack of personal jurisdiction.
The trial court granted the motion to dismiss on December 5, 1997. In its judgment entry, the trial court determined that the conduct of Gran Turismo and Fidanza did fall within the ambit of the Missouri long-arm statute. Nevertheless, the trial court found that they did not have sufficient minimum contacts with Missouri to allow for the maintenance of the lawsuit in that state.
From this judgment, appellant filed a timely notice of appeal with this court. He now asserts the following assignment of error:
 "The trial court erred in dismissing the Missouri court's judgment based on lack of personal jurisdiction."
At the outset, we must make the following observation. The motion filed by Gran Turismo and Fidanza in the trial court bore the caption of "Motion to Dismiss Foreign Judgment." This was an inaccurate designation for this motion. Once the foreign judgment was filed in Ohio, it was accorded the same status as any other judgment rendered by the trial court. Indeed, a foreign judgment filed in accordance with the statute "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of common pleas[.]" (Emphasis added.) R.C. 2329.022.
A trial court may not simply "dismiss" an otherwise valid foreign judgment after it has been properly filed by a judgment creditor in Ohio. It is apparent, therefore, that Gran Turismo and Fidanza were really asking the trial court to vacate, or set aside, the judgment after it was entered.
Oftentimes, a judgment debtor seeks the vacation of a foreign judgment by filing a Civ.R. 60(B) motion for relief from judgment. See, e.g., Infern-O-Therm Corp. v. Thickstun Bros. Equip. Co.,Inc. (Apr. 16, 1991), Franklin App. No. 91AP-51, unreported, 1991 WL 60682. While Gran Turismo and Fidanza did not expressly reference Civ.R. 60(B) in their motion, they did indicate that they sought relief from the Missouri judgment on the ground that it was void due to a lack of personal jurisdiction.
This court, however, has expressly held that a motion for relief from judgment under Civ.R. 60(B) is not the proper mechanism for challenging a void judgment. Rather, the appropriate recourse is to file a common law motion to vacate based upon the inherent power of a trial court to set aside a judgment which is encumbered by a jurisdictional defect. Molz v. Magdych (Aug. 23, 1996), Trumbull App. No. 96-T-5396, unreported, at 2, 1996 WL 537858, citing Thorpe v. Oakford (Jan. 19, 1996), Portage App. No. 94-P-0057, unreported, at 3, 1996 WL 200580. See, also, Patton v.Diemer (1988), 35 Ohio St.3d 68, paragraph four of the syllabus ( holding that "[t]he authority to vacate a void judgment is not derived from Civ.R. 60(B) but rather constitutes an inherent power possessed by Ohio courts"). Hence, notwithstanding how Gran Turismo and Fidanza styled their motion, we will treat it as a motion to vacate the foreign judgment on the ground that it was void for lack of personal jurisdiction.
We turn now to the merits of the assigned error. It is axiomatic that a court must have jurisdiction over a party before it can compel that party to comply with its orders. Such personal jurisdiction is defined as "[t]he power of a court over the person of a defendant in contrast to the jurisdiction of a court over a defendant's property or his interest therein[.]" Black's Law Dictionary (6 Ed.Rev. 1990) 1144.
The United States Supreme Court has stated on a number of occasions that the Due Process Clause of the Fourteenth Amendment requires that a state court properly exercise personal jurisdiction over a nonresident defendant. See, e.g., InsuranceCorp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee (1982),456 U.S. 694, 702. The requirement of personal jurisdiction is not intended to restrict judicial power as a matter of sovereignty. Rather, it limits a court's power as a means of sanctifying individual liberty. Id.
The determination of whether a state court has in personam
jurisdiction over a nonresident requires a two-step analysis. First, the court must look to the words of the forum state's long-arm statute or applicable civil rule to determine whether jurisdiction lies under the facts of a given case. Second, if the long-arm statute or civil rule authorizes the exercise of personal jurisdiction, then the court must decide whether the actual assertion of such jurisdiction would violate due process of law.Goldstein v. Christiansen (1994), 70 Ohio St.3d 232, 235; U.S.Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.
(1994), 68 Ohio St.3d 181, 183-184; Kentucky Oaks Mall Co. v.Mitchell's Formal Wear, Inc. (1990), 53 Ohio St.3d 73, 75; Fallangv. Hickey (1988), 40 Ohio St.3d 106, 107.
Under this bipartite framework, the Due Process Clause establishes the outer parameters beyond which the exercise of personal jurisdiction by a state court is constitutionally impermissible. In turn, the state's long-arm statute or applicable civil rule provides the actual basis upon which the exercise of in personam jurisdiction is authorized by state law.
The question of whether the assertion of personal jurisdiction comports with the due process requirements of theFourteenth Amendment is governed by federal law. By contrast, the interpretation of a long-arm statute or equivalent civil rule is a matter that must be determined through an application of the forum state's law.
Ordinarily, the judgment of a sister state is entitled to full faith and credit in Ohio. Litsinger Sign Co. v. American Sign Co.
(1967), 11 Ohio St.2d 1, 4; Section 1, Article IV, United States Constitution ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."). However, a judgment from a sister state is subject to collateral attack in Ohio if there was no subject matter or personal jurisdiction to render the judgment under the sister state's internal law or if the assertion of jurisdiction over the defendant violated the Due Process Clause. LitsingerSign, 11 Ohio St.2d at 4. See, also, Speyer v. Continental SportsCars, Inc. (1986), 34 Ohio App.3d 272, 274.
In the case sub judice, appellant commenced the litigation against Gran Turismo and Fidanza in Missouri, thereby making it the forum state. Recognizing this, the trial court in Ohio looked to the language of the Missouri long-arm statute as required by the first step in the personal jurisdiction analysis. Missouri has a standard "enumerated act" long-arm statute. Mo.Rev.Stat. 506.500 provides in part:
 "1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
 "(1) The transaction of any business within this state;
 "(2) The making of any contract within this state;
 "(3) The commission of a tortious act within this state[.]"
Upon examining the instant facts, the trial court ruled that the exercise of personal jurisdiction by the Missouri court was in fact authorized under Mo.Rev.Stat. 506.500 as that statute has been interpreted by relevant state case law. Neither side disputes this holding on appeal. Thus, we will assume arguendo that the conduct of Gran Turismo and Fidanza fell within the scope of the Missouri long-arm statute, thereby allowing us to proceed to the mandatory second step of the personal jurisdiction analysis.
In this stage, we must ascertain whether the Missouri court's invocation of in personam jurisdiction over Gran Turismo and Fidanza comported with due process of law. Any discussion of personal jurisdiction in the constitutional context must always begin with the landmark decision of the United States Supreme Court in International Shoe Co. v. Washington (1945),326 U.S. 310.
The Court in International Shoe for the first time endorsed the idea that a state court could assert jurisdiction over an out-of-state defendant as long as the defendant had minimum contacts with the forum state:
 "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe, 326 U.S. at 316, quoting Milliken v. Meyer
(1940), 311 U.S. 457, 463.
The Supreme Court of Ohio has adopted the principles of International Shoe and its progeny. See U.S. Sprint Communications, 68 Ohio St.3d at 187, citing Wainscott v. St. Louis-San Francisco Ry. Co.
(1976), 47 Ohio St.2d 133, syllabus.
The test for determining whether a nonresident defendant can be subjected to a lawsuit in the forum state is not mechanical or quantitative. International Shoe, 326 U.S. at 319. Instead, it is the quality and nature of the defendant's contacts with the state that will dictate whether due process requirements have been satisfied. Id. Since there is no bright-line test that can be applied, a minimum contacts analysis is necessarily fact driven.
In Helicopteros Nacionales de Colombia, S.A. v. Hall (1984),466 U.S. 408, the United States Supreme Court distinguished between "general" and "specific" personal jurisdiction. The Court observed that "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising `specific jurisdiction' over the defendant." Helicopteros Nacionales,466 U.S. at 414, fn. 8. By contrast, "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising `general jurisdiction' over the defendant." Id. at 414, fn. 9.
In cases involving the exercise of specific jurisdiction by a state court over a nonresident defendant, the Court has developed a two-tiered constitutional analysis. See Burger King Corp. v.Rudzewicz (1985), 471 U.S. 462. The first question is whether the defendant "purposefully established `minimum contacts' in the forum State." Id. at 474. If the defendant did, then the state court is required to consider such contacts with the forum state "in light of other factors to determine whether the assertion of personal jurisdiction would comport with `fair play and substantial justice.'"[1] Id. at 476. The Supreme Court of Ohio has recognized the two-tiered approach to questions involving the exercise of specific jurisdiction for suits arising out of or related to the nonresident defendant's contacts with the forum state. See, e.g., U.S. Sprint Communications,68 Ohio St.3d at 186-187; Kentucky Oaks Mall, 53 Ohio St.3d at 77.
In the matter at bar, appellant's lawsuit ostensibly arose out of or was related to the contacts that Gran Turismo and Fidanza had with the forum state of Missouri. Thus, the Missouri court invoked specific jurisdiction over them.
When presented with the foreign judgment, the trial court in Ohio recognized this as a case of specific jurisdiction and proceeded under the first tier set forth by the Supreme Court inBurger King, to wit: whether Gran Turismo and Fidanza purposefully established minimum contacts in Missouri. The trial court concluded that they had not availed themselves of such contacts.
It would have been improper for the trial court to have based this decision solely on the one-sided rendition of facts that appellant had previously set forth in the complaint that he filed against Gran Turismo and Fidanza in the Missouri court. Recognizing this, the trial court allowed the parties to file memorandums of law in support of and opposition to the motion to vacate the foreign judgment. In these legal briefs, the parties were able to summarize the amount and extent of the contacts that Gran Turismo and Fidanza had with the forum state of Missouri.[2]
The determination of whether a nonresident defendant had the requisite minimum contacts with a forum state is a question of law. As such, this court applies a de novo standard of review on appeal. After reviewing the trial court's judgment in the present case, we conclude that it was correct as a matter of law.
As an initial matter, there was no evidence that either Gran Turismo or Fidanza had any substantial commercial connection to Missouri. For instance, there was no indication that they owned or leased property in Missouri or conducted any of their business operations there. Moreover, the record does not contain any evidence that Gran Turismo and Fidanza engaged in a pattern of systematic commercial contacts with Missouri, thereby precluding the conclusion that they maintained an active business presence in the state.
The manner in which the contractual relationship between the parties was formed also does not lend itself to a finding of the required minimum contacts. For example, it was appellant who contacted Gran Turismo, not vice versa. Consequently, the business did not purposefully avail itself of the laws of Missouri, but rather simply responded to an inquiry made by appellant. See, e.g., Krutowsky v. Simonson (1996), 109 Ohio App.3d 367,371 (noting that it was the plaintiff-owner in Ohio who initiated the contact with the defendant-business in Illinois which restored and repaired vintage automobiles).
In addition, Gran Turismo did not actively advertise its automotive services in a Missouri-based publication. Appellant learned of the company through an advertisement in a magazine with a national circulation, which obviously included the state of Missouri. It cannot be said that Gran Turismo willingly subjected itself to Missouri's jurisdiction by advertising in a national publication. Id.
The trial court determined that the site of the transaction between the parties was Ohio. We agree. Appellant shipped the Jaguar to Ohio, and all of the repair work was subsequently performed at Gran Turismo's facility.
Appellant urges this court to hold that the mail, facsimile, and telephonic communications between the parties were sufficient minimum contacts from a constitutional standpoint. As a general matter, though, the use of interstate lines of communication such as mail service, facsimiles, and telephones is not automatically a purposeful availment of the privileges of conducting commerce in a forum state such that a nonresident defendant should anticipate being haled into court there.
Appellant, however, attempts to distinguish the case at bar by maintaining that the interstate communications between the parties were themselves the tortious acts. In support of this position, appellant argues that the mail and facsimile correspondence contained the fraudulent misrepresentations that formed the grounds for several of the causes of action in his lawsuit (e.g., the breach of contract, negligence, and fraud claims). From appellant's perspective, therefore, these written documents were themselves extraterritorial tortious acts intentionally directed into the state of Missouri.[3]
We ultimately cannot agree that the interstate communications between the parties constituted the minimum contacts required by due process. Although the parties had some telephonic contact, Gran Turismo primarily forwarded progress reports and invoices to appellant via the mail or facsimile. While such correspondence would certainly have evidentiary value in any ensuing litigation between the parties, we believe that Ohio was the primary site of the tortious conduct allegedly committed by Gran Turismo and Fidanza. Again, we emphasize that the obligations imposed on them under the bilateral contract were to be performed exclusively in Ohio. Even assuming that appellant accurately characterizes the nature of the interstate mail, facsimile, and telephonic communications between the parties, the picture that emerges is of a Missouri resident doing business with an Ohio corporation in Ohio, not vice versa.
Given the absence of minimum contacts with Missouri by Gran Turismo and Fidanza, there could be no proper exercise of inpersonam jurisdiction over them as nonresident defendants. The trial court did not err in granting the motion to vacate the Missouri judgment for lack of personal jurisdiction.
Based on the foregoing analysis, appellant's sole assignment of error is not well-taken. Accordingly, the judgment of the trial court is affirmed.
FORD, P.J., O'NEILL, J., concur.
[1] Such other factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. Burger King, 471 U.S. at 477, citingWorld-Wide Volkswagen Corp. v. Woodson (1980), 444 U.S. 286
(wherein the Court first identified these five factors).
[2] As an aside, we note that in the context of a Civ.R. 12(B)(2) motion to dismiss for lack of jurisdiction over the person, the parties may submit affidavits, depositions, interrogatories, or oral testimony when the claimed lack of jurisdiction is not apparent on the face of the complaint. See McCormac, Ohio Civil Rules Practice (2 Ed. 1992), Section 6.17, at 145. If the defendant asserts lack of personal jurisdiction, the burden is on the plaintiff (i.e., the non-moving party) to establish the trial court's jurisdiction. Id. at 145-146. Obviously, the law governing Civ.R. 12(B)(2) is inapposite to the case at bar since the rule applies only to a motion to dismiss filed during the pleading stage after a complaint has been filed in an Ohio court. In this case, appellant filed his complaint in the Missouri court, obtained a default judgment, and then brought an action in Ohio pursuant to R.C. 2329.021 et seq. to enforce the foreign judgment. Despite the inapplicability of Civ.R. 12(B)(2), the parties could have requested a hearing on the motion to vacate the foreign judgment, and both sides were free to submit affidavits and other evidence to support their respective positions. See, e.g., Molz, 1996 WL 537858. Thus, the procedure employed by the trial court in adjudicating a motion to vacate a foreign judgment for lack of personal jurisdiction can be somewhat analogous to the procedure for addressing a Civ.R. 12(B)(2) motion.
[3] Appellant cites Peabody Holding Co., Inc. v.Costain Group PLC (E.D.Mo. 1992), 808 F. Supp. 1425 as authority for this proposition. In this regard, we would simply note thatPeabody is a Missouri federal district court case and is, therefore, not binding upon either this court or the state courts in Missouri. Its potential value in both state court systems would merely be persuasive.