OPINION
{¶ 1} Defendants-Appellants, Barbara Smith and Adnet, Inc. (hereafter collectively referred to as "Appellants"), appeal a judgment of the Crawford County Court of Common Pleas, finding that Appellants breached their contract with Plaintiff-Appellee, Directory Concepts, Inc. Appellants maintain that the trial court improperly exercised personal jurisdiction over them because the evidence failed to establish that they transacted business in Ohio. Furthermore, Appellants maintain that any breach of contract on their part was waived by Directory Concepts' continued performance under the contract, despite full knowledge of Adnet's breach. Smith also contends that she signed the contract only in her capacity as president of Adnet and that the trial court erred by finding her individually liable. After reviewing the entire record and the applicable statutory and case law, we find no error in the judgment of the trial court. Accordingly, all three of Appellants' assignments of error are overruled, and the judgment of the trial court is affirmed.
 {¶ 2} Directory Concepts is an Ohio corporation with its headquarters located in Galion, Ohio, and Adnet is a New Jersey corporation with its headquarters located in Laurel, New Jersey. Both are Certified Marketing Representatives ("CMR") accredited by the Yellow Page Publishers' Association ("YPPA"). CMRs are agencies authorized by the YPPA to solicit and manage yellow page advertising. CMRs forward their clients' requests for yellow page advertising to the YPPA, which acts as a clearing house for yellow page publishers across the country. Both Directory Concepts and Adent used the same computer software to manage their clients' accounts and to electronically transmit orders to the YPPA.
 {¶ 3} Around March of 2000, Directory Concepts sent Appellants an unsolicited fax, proposing to purchase Adnet's yellow page advertising accounts. Smith responded to the fax, indicating that she had some interest in pursuing the possible sale. Directory Concepts' president, Charles Harbour, and vice president, Thomas Hickox, traveled to New Jersey to meet with Adnet's president, Barbara Smith and discuss the possible sale. At that meeting, Smith produced a computer generated report showing approximately what clients she currently had and the commission she was receiving from each client. Both sides agree that the report was only a snapshot of Adnet's business and subject to change.
 {¶ 4} After negotiations between the parties, a decision was reached that Directory Concepts would purchase Adnet's yellow page advertising accounts for $90,000. Harbour sent a copy of the proposed contract to Smith, which she executed at Adnet's headquarters in New Jersey. The contract detailed the assets Directory Concepts would be purchasing from Appellants, including, account information, customer files, and other records necessary to manage customer relationships. Additionally, the contract required Smith to assist Directory Concepts with the transition of the accounts through meetings and conversations with Directory Concepts. According to the payment schedule of the contract, Adnet was due an advance payment of $5,000 after it provided Directory Concepts with an accounts receivable aging report. The contract then called for a payment of $40,000 due upon the transfer of the accounts from Adnet to Directory Concepts and a payment of $45,000 due sixty days after the transfer.
 {¶ 5} From the beginning there was trouble in the electronic exchange of Adnet's account information. Some of the account information Smith was attempting to send to Adnet was lost during the electronic transmission. The result was that Directory Concepts was unable to get complete, accurate, and up to date information concerning the accounts it had just purchased from Adnet. Directory concepts attempted to rectify the situation by requesting the hard copies of client contracts and information from Adnet, but Adnet, despite repeated assurances, never fully provided all of the information required under the contract. Even though Directory Concepts never received either the aging report or the complete account information, it paid Adnet the first two installments due under the contract. However, Directory Concepts refused to pay Adnet the entire $45,000 due under the last installment of the contract, instead only paying $20,000 of the last installment and informing Adnet that it would get the remainder due once everything had been sorted out.
 {¶ 6} In October of 2000, Directory Concepts brought suit against both Adnet and Smith in the Crawford County Court of Common Pleas, seeking compensation for breach of contract. Appellants opposed the suit, claming that the trial court did not have personal jurisdiction over them. The trial court held a hearing on the jurisdictional matter and found that Appellants had transacted business in Ohio sufficient to establish personal jurisdiction. Thereafter, the issue of breach of contract was tried before the court, and the court found in favor of Directory Concepts. The trial court found that not only had Appellants breached their duty of contract to Directory Concepts, but that Smith had also purposefully misrepresented material facts to Directory Concepts and withheld payments from former clients that were rightfully owed to Directory Concepts. Accordingly, the trial court awarded Directory Concepts a sum total of $31,881.75 in damages. From this judgment Appellants appeal, presenting three assignments of error for our review.
 Assignment of Error I The court erred in finding that it had personal jurisdictionover the defendants under R.C. 2307.382 [personal jurisdiction]and the due process clause of the Fourteenth Amendment of theU.S. Constitution.
 {¶ 7} In the first assignment of error, Appellants challenge the trial court's finding that it had personal jurisdiction over them. Appellants maintain that they never transacted business in Ohio as required by R.C. 2307.382 and that the exercise of jurisdiction violates their due process rights.
 {¶ 8} A reviewing court must apply a two part test to determine whether a trial court had personal jurisdiction over a defendant. U.S. Sprint Communication Co. LP v. Mr. K's Foods,Inc. (1994), 68 Ohio St.3d 181, 184-185. The court must first consider whether jurisdiction is proper under Ohio's long-arm statute. Id. If the long-arm statute applies, then the court must decide if exercising jurisdiction violates the defendant'sFourteenth Amendment due process rights. Id.
 {¶ 9} Ohio's long-arm statute, R.C. 2307.382, provides that:
(A) A court may exercise personal jurisdiction over a personwho acts directly or by an agent, as to a cause of action arisingfrom the person's:
 (1) Transacting any business in this state;
"Transacting any business" has been broadly defined by the Ohio Supreme Court as: "to prosecute negotiations; to carry on business; to have dealings * * *. The word embraces in itsmeaning the carrying on or prosecution of business negotiations
but it is a broader term than the word `contract' and mayinvolve business negotiations which have been either wholly or partly brought to a conclusion." Kentucky Oaks Mall Co. v.Mitchell's Formal Wear, Inc. (1990), 53 Ohio St.3d 73, 75, quoting Black's Law Dictionary (5 Ed. 1979) 1341. (Emphasis added in original.) "With no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case determination." U.S. Sprint, 68 Ohio St.3d at 185.
 {¶ 10} Appellants contend that because Directory Concepts initiated contact with them and because the contract was signed in New Jersey, they never actually transacted business in Ohio. The fact that Directory Concepts initiated the transaction in a foreign jurisdiction is relevant, but not dispositive of the jurisdictional issue. Long v. Grill, 155 Ohio App.3d 135,2003-Ohio-5665, at.
¶ 18. The Supreme Court's definition of transacting business includes not only the prosecution of negotiations, but also the "carrying on" of them. Kentucky Oaks, 53 Ohio St.3d at 75.
 {¶ 11} In the negotiations herein, Appellants responded to Directory Concepts' solicitation and contacted Directory Concepts in Ohio numerous times using mail, telephone, and fax. Furthermore, the contract Appellants entered into required them to transfer various assets to Ohio including an aging report, directory orders, and client account information. Appellants were obligated by the contract to transfer accounts and other assets to Ohio, to remain in contact with Directory Concepts through physical meetings and conversations, and Barbara Smith actually came to Ohio to participate in a meeting with Directory Concepts' personnel. Smith was also individually required by the contract to continue assisting Directory Concepts in the transition of accounts through additional meetings and conversations. Under the broad definition of transacting business as established by the Ohio Supreme court in Kentucky Oats, we find that the Appellants were transacting business in the state of Ohio. Accordingly, we must find that the trial court was correct in holding that Appellants satisfied the first part of the personal jurisdiction test.
 {¶ 12} Under the next part of the jurisdictional test, a reviewing court must decide whether the exercising of personal jurisdiction violates defendant's due process rights. A three-part test has been established to determine whether personal jurisdiction over a defendant comports with due process.Schnippel Construction, Inc. v. Kreps (Feb. 15 2002), 3rd Dist. No. 17-01-16, unreported. First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities there; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair. Id. citing Cole v. Mileti (C.A. 6 1998), 133 F.3d 433, certiorari denied (1998), 525 U.S. 810, 119 S.Ct. 42.
 {¶ 13} In Schnippel, an Ohio general contractor solicited bids for construction work from an Indiana subcontractor.Schnippel Construction, supra. After negotiations, the Ohio general contractor sent a contract to the Indiana subcontractor, which was signed in Indiana and returned to Ohio. Id. The parties kept in contact through phone and mail, but all of the labor completed under the contract was done in Indiana. Id. In holding that the Ohio trial court had personal jurisdiction over the Indiana contractor, this Court stated that "[a] nonresident defendant purposefully avails himself of the privilege of conducting activities in a forum state when he knowingly enters into a contract with a resident of and in the forum state." Id.
 {¶ 14} The facts herein present a similar situation to those above. Directory Concepts initiated the contact with an out of state corporation, and the contract was actually signed in a foreign jurisdiction. However, unlike the facts in Schnippel,
not all of the labor under the contract was to be performed in the foreign jurisdiction. Appellants were required to transfer the accounts to Ohio and to continue meeting with Directory Concepts. The current facts actually present a stronger case than that in Schnippel for finding that Appellants purposefully availed themselves of conducting activities in Ohio. We find that, under the first prong of the due process analysis before us, Appellants were not harmed.
 {¶ 15} The second prong requires that the cause of action arise out of Appellants' actions in Ohio. Appellants were required to transfer account information to Ohio and to continue meeting with Directory Concepts to assist in the account transition. Appellants failed to completely transfer all of the required account information to Ohio, and the information they did transfer was incomplete and unorganized. Furthermore, Smith did not adequately assist with the transfer, as required under the contract. The cause of action arises out of the failure of Appellants to perform required duties in Ohio. Therefore, we find that this cause of action arises out of Appellants' actions in Ohio and that Appellants suffered no injury under the second prong of the due process analysis.
 {¶ 16} Last, the acts of the defendant, or consequences caused by the defendant, must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair. Appellants originated contact with Directory Concepts numerous times. They attempted to transfer various account information to Ohio on several occasions, and Smith visited Directory Concepts' Ohio headquarters in an attempt to identify the various documents that had been transferred. Appellants claim that this contract was a one shot deal requiring only the one time transfer of account information and that it would be unfair to find they had a substantial connection to Ohio. But the contract clearly requires Appellants to continue assisting in the transition of accounts beyond the mere electronic transfer. Furthermore, because Appellants failed to transfer the required information the first time, they became substantially connected to Ohio due to the resulting conversations, meetings, and mailings, attempting to rectify the situation. Finally, the failure to transfer all of the required information was a substantial "consequence caused by the defendants" within Ohio, which fully warrants the exercise of jurisdiction over them. We find that Appellants' due process rights are not violated under the third prong of this test.
 {¶ 17} Accordingly, we find that Appellants transacted business in the state of Ohio and that the exercising of personal jurisdiction over them did not violate their Fourteenth Amendment due process rights. Therefore, Appellants' first assignment of error is overruled.
 Assignment of Error II The court erred in failing to find that the Plaintiff hadwaived by its conduct the claimed breaches of the defendant andthat the defendant had substantially performed its duties underthe contract.
 {¶ 18} In the second assignment of error, Appellants claim that the trial court erred in not finding that Directory Concepts had waived its claims based upon a breach of contract. Under the contract entered into between Appellants and Directory Concepts, Appellants were required to provide an accounts receivable aging report and various customer account information including, customer files, records, contracts, and artwork. Despite only receiving partial customer files and never receiving an aging report, Directory Concepts continued to pay Appellants according to the payment schedule outlined in the contract. Appellants contend that this continued performance waived Directory Concepts' right to complain of the known breaches of contract.
 {¶ 19} "A waiver is the voluntary relinquishment of a known right." Chubb v. Ohio Bur. of Workers' Comp. (1998),81 Ohio St.3d 275, 278. It does not need to be established through an express statement in a contract; it may be inferred through the acts and conduct of the parties. New Haven Corner Carry Out,Inc. v. Clay Distrib. Co., 3rd Dist. No. 13-01-30, 2002-Ohio-2726, at ¶ 31, citing Ohio Farmers Ins. Co. v.Cochran (1922), 104 Ohio St. 427, syllabus. However, the party claiming that there was an implied waiver of contractual terms has the burden of proving by a preponderance of the evidence that a waiver, through clear and unequivocal acts or conduct, did occur. Id. Appellants have failed to meet this burden.
 {¶ 20} Testimony at trial established that Directory Concepts continued to pay Appellants under the contract even in the face of contractual breaches by the Appellants. However, there was also testimony that Directory Concepts continued to pursue the disclosure of both the aging report and full account information. There is no proof in the record that Directory Concepts waived its right to receive all of the materials it was due under the contract. To the contrary, the evidence established that Directory Concepts was constantly attempting to have the Appellants rectify their breaches by providing the materials required under the contract. Appellants have failed to provide any proof that Directory Concepts did anything other than pursue its rights under the contract while at the same time continuing its own performance under the contract. Accordingly, Appellants' second assignment of error is overruled.
 Assignment of Error III The court erred in entering judgment against the defendant,Barbara Smith, as the evidence establishes clearly that she actedonly in a corporate capacity.
 {¶ 21} In the third assignment of error, Smith contends that the trial court erred by finding her liable as an individual. She maintains that she should not be held personally liable for a breach of contract because she signed the contract in her capacity as the president of Adnet.
 {¶ 22} Normally, a party signing a contract as a corporate officer will not be individually liable on that contract. Spicerv. James (1985), 21 Ohio App.3d 222, 223. However, an individual can become bound on a contract, despite signing as a corporate officer, if the language of the contract itself demonstrates individual liability. Id. see, also, Aungst v. Creque (1905),72 Ohio St. 551, 554-555. To determine whether a person signing a contract as a corporate officer is personally liable, a court must look to the intent of the parties. HLC Trucking v. Harris,
7th Dist. No. 01 BA 37, 2003-Ohio-694, at ¶ 49.
 {¶ 23} Smith claims that because she signed the contract with her title as president of Adnet, she is immune from personal liability on the contract. But the language of the contract itself indicates that the parties intended that Barbara Smith would personally perform some of the obligations under the contract and created a reasonable expectation that she would be personally liable in addition to Adnet.
 {¶ 24} The first paragraph of the contract states that "Directory Concepts, Inc. and its principal Charles Harbour, will purchase specified assets and accounts from Adnet, Inc. and its principal Barbara Smith." (Emphasis added.) This language suggests that in addition to Adnet, Barbara Smith, as an individual, was also intended to be bound by the contract. It is interesting to note that Appellants added Charles Harbour to this suit as a defendant, seemingly interpreting the above language to signify that Charles Harbour was individually bound by the contract. In the fifth paragraph, the contract states that "Adnet and Barbara Smith will assist in the transition of accounts to Directory Concepts." It goes on to provide that "Directory Concepts will reimburse Barbara Smith for any usual and customary `out of pocket' business expenses associated with this transition." This language further bolsters the trial court's interpretation of the contract that the parties intended Smith to be held personally liable. This interpretation also comports with the testimony of both Smith and Harbour. Smith testified that the contract was entered into between herself, Adnet, and Directory Concepts. Harbour also testified that he intended to be bound under the contract as a corporation and an individual.
 {¶ 25} Looking at the explicit language used in the contract itself, we find that it was the intention of the parties to hold Smith personally responsible on the contract. Therefore, Appellants' third assignment of error is overruled.
 {¶ 26} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Shaw, P.J., and Cupp, J., concur.