JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry is not an opinion of the court under S.Ct.R.Rep.Op. 3(A).
Defendants-appellants Roosevelt Davis Jr. and Archer Chase Resources Limited, LLC, appeal the trial court's denial of their motion to void the judgment against them for want of personal jurisdiction. We affirm.
Plaintiff-appellee Calvin Harper was a minister at a local church. Defendant Albert Sewell, one of Harper's parishioners, told Harper about a great investment opportunity. Harper flew to California to discuss the opportunity with defendants Nicholas Richmond, Jewel Meyers, Joseph Saranello, and Premier Marketing Investments, Inc. They assured Harper that he could earn a 100% return per month on an investment of $1 million. Harper believed them, cashed out his individual retirement account in May 2002, and wired over $1 million to Premier Marketing. A month later, Harper did not have his money back, so he began to worry. He contacted Richmond and demanded payment. But Richmond would not pay, and he eventually pleaded guilty to wire-fraud and money-laundering charges.
In July 2002, the Securities and Exchange Commission contacted Harper and told him that it was investigating Richmond, Sewell, and Premier Marketing. But Harper still did not get his money in July, or in August. Or ever.
In September, a brief ray of hope came to Harper when Davis called him and sent him a letter on Archer Chase letterhead. The letter explained that Davis and Archer Chase were "involved in several of Mr. Sewell's transactions which are in the process of reaching successful conclusions." The letter informed Harper that Davis expected confirmation shortly and that, after the confirmation, Harper could expect a date for the return of his funds (now promised to be $2 million). The letter concluded, "There is no question that these transactions will be completed and you will receive the $2 Million USD."
Over the next several weeks, Harper and Davis talked on the phone five or six times. Each time, Davis assured Harper that the money would be ready in a few days or that the transaction was almost complete. Davis admitted that he never met any of the other defendants personally, but that he spoke with Sewell over the phone and sent the letter and made the calls as a favor to Sewell. Davis claimed he was involved in the alleged financial transaction (which involved securing a loan against precious metal), and that Sewell had asked him to contact Harper as a favor.
Harper sued everybody. The trial court held an evidentiary hearing at which none of the defendants appeared. Harper presented testimony and evidence showing that he was defrauded, and the trial court ruled in his favor. When Davis found out about the judgment against him, he and Archer Chase moved to void the judgment for want of personal jurisdiction, and they also moved for relief from judgment under Civ.R. 60(B). The trial court held a separate hearing; Davis and Harper both testified.
The trial court rejected Davis's claims, holding that he had subjected himself to personal jurisdiction in Ohio and that Civ.R. 60(B) was not applicable in this case. On appeal, Davis and Archer Chase assign one error — namely, that the trial court should have voided the judgment.
Determining whether personal jurisdiction exists is a two-step process.[1] First, the court must answer whether the long-arm statute and applicable civil rules confer jurisdiction.[2] Second, the court must determine whether granting jurisdiction deprives the defendant of the right to due process under the Fourteenth Amendment to the United States Constitution.[3]
Ohio's long-arm statute permits jurisdiction over a person who causes tortious injury "by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured * * *."[4] Personal jurisdiction also exists where the person has caused a tortious injury by a criminal act, "any element of which takes place [in Ohio], which he commits or in the commission of which he is guilty of complicity."[5]
Davis stresses that Harper had already sent his money to Richmond and the others before Davis had even heard of Harper, and therefore that Davis could not have caused any harm. But the trial court found that Davis was "one of the players in accomplishing the continuum of fraud against Harper." And the record certainly supports that finding.
Davis also argues that he never promised Harper anything specific about the money. But the trial court resolved all credibility issues in Harper's favor, and rightfully so — Davis had false information on his curriculum vitae. And Davis claims that he knew nothing of Sewell's business, but his letter to Harper stated that he was involved with "several of Mr. Sewell's transactions." Further, his "doing a favor for Sewell" defense seems incredible.
Davis's acts were committed with the purpose of injuring Harper by keeping him separated from his money as long as possible. Even though the money had already been sent to Richmond, Davis helped to convince Harper that nothing was amiss and that Harper would have his money shortly. The long-arm statute granted Ohio personal jurisdiction over Davis.
Davis does not dispute that he received the first amended complaint, but he agrees that he did not have notice of the evidentiary hearing. The record clearly shows that Davis was aware of the pending litigation against him and that he did not bother to hire an attorney or to answer the complaint against him.
Ohio's jurisdiction over Davis did not violate his due-process rights because Davis made several contacts with Harper, intending to defraud him. Just because Davis did not set foot in Ohio does not mean he did not subject himself to Ohio's jurisdiction when he intentionally injured a person in Ohio. The trial court properly rejected Davis's personal-jurisdiction argument.
The trial court also got it right when it came to Davis's Civ.R. 60(B) claim. Under that section, "[T]he court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment."
The only possible claim that Davis could have made was under subsection (1): mistake, inadvertence, or excusable neglect. As the trial court noted, there is nothing in the civil rules that requires notice of a trial date; after Davis was served with a summons and the complaint and failed to answer, he was not entitled to any further notice. There is nothing in the record that suggests Davis's inaction was a mistake or that it was inadvertent. He knew that there was a suit against him, and he chose to do nothing. His neglect was inexcusable.
Davis argues that his involvement was similar to defendant Jordan Wank's, who was dismissed for lack of personal jurisdiction. But unlike Davis, Wank never actually spoke to Harper. Davis's case was not the same as Wank's.
We therefore overrule Davis's and Archer Chase's sole assignment of error and affirm the trial court's judgment.
Further, a certified copy of this Judgment Entry shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Painter and Sundermann, JJ.
[1] See U.S. Sprint Communications Co. v. Mr. K's Foods, Inc.,68 Ohio St.3d 181, 1994-Ohio-504, 624 N.E.2d 1048.
[2] Id. at 183.
[3] Id. at 184.
[4] R.C. 2307.382(A)(6).
[5] R.C. 2307.382(A)(7).