OPINION
{¶ 1} Appellant, LaFarge North America, Inc., appeals from the judgment of the Trumbull County Court of Common Pleas that dismissed its appeal for lack of personal jurisdiction pursuant to Civ. R. 12(B)(2). For the following reasons, we affirm.
 {¶ 2} Substantive and Procedural History
 {¶ 3} LaFarge North America, Inc., a foreign corporation formed under the laws of the state of Maryland and licensed to do business in Ohio, filed a complaint against *Page 2 
appellee, Forbes, an excavation company, and Neshannock Sand Gravel, Inc., a material supply company, who is not a party to this appeal. Both Forbes and Neshannock are foreign business entities, are not licensed to do business in Ohio, and do not conduct any business in Ohio. Further, neither have representatives or agents in Ohio.
 {¶ 4} In its complaint, Lafarge alleged Forbes and Neshannock breached their agreement for the purchase of slag from LaFarge's slag facility located in Pulaski, Pennsylvania. LaFarge claimed that pursuant to the contract, Forbes had agreed it would pay in full for "all the slag upon the Property, whether removed or not, no later than May 31, 2006." As of October 26, 2006, LaFarge alleges there was 303,622 tons of granulated slag remaining at the facility, which Forbes did not pay for as agreed. Thus, LaFarge claimed that Forbes was in breach of their agreement for an amount of $759,055, or $2.50 per ton as specified in the contract.
 {¶ 5} LaFarge and Neshannock filed a joint and separate motion to dismiss for lack of personal jurisdiction pursuant to Civ. R. 12(B)(2). Mr. Blaine Forbes, president of Forbes and Neshannock Sand Gravel, attached an affidavit to the motion. In relevant part, Mr. Forbes' affidavit stated that (1) Forbes is a Pennsylvania limited partnership with its principal place of business in New Castle, Pennsylvania; (2) Forbes does not have an office in Ohio; (3) Forbes does not have a registered agent in Ohio nor is it licensed as a foreign entity to conduct business in Ohio; (4) Forbes does not own any real or personal property in Ohio; and that (5) Forbes is a company that "generally engages in the excavation business in the commonwealth of Pennsylvania." *Page 3 
 {¶ 6} LaFarge also submitted an affidavit in their brief in opposition to rebut Forbes' motion to dismiss, as well as a copy of the purchase agreement at issue. The affidavit of Mr. Tim Page, LaFarge's business Unit Manager for the Lordstown, Trumbull County business office location, as well as related locations in Eastern and Western Pennsylvania, stated in relevant part that: (1) on a number of occasions Mr. Forbes contacted him by telephone at his LaFarge office in Lordstown, Ohio, inquiring as to whether LaFarge was interested in selling the slag material located at Lafarge's Pulaski Slag Reserve facility in Pulaski, Pennsylvania; (2) on May 29, 2003, Mr. Forbes came to his Lordstown office to execute the purchase agreement for such; and (3) Mr. Forbes then visited the Lordstown office on at least two occasions after the date of execution to discuss the purchase of the real state underlying the slag reserve facility and slag removal.
 {¶ 7} The court found that the extent of the business dealings between Forbes and LaFarge consisted of three to four phone calls from Forbes to LaFarge in Ohio, that the parties executed the agreement in Ohio, and that the contract contained an Ohio choice of law provision. Further, and most fundamentally, the agreement did not concern any transaction in Ohio whatsoever, and in fact, prohibited Forbes from selling slag in three Ohio counties, Mahoning, Trumbull and/or Columbiana.
 {¶ 8} Because the court found that Forbes did not purposefully avail itself of any privileges in Ohio, nor did the underlying cause of action arise from the actions of Forbes within this state, the court determined the connection to Ohio was tenuous, random, and not purposefully directed toward this state. Thus, the court held that Forbes' connection with Ohio or LaFarge was insufficient to satisfy the definition of *Page 4 
"transacting business" pursuant to Ohio's long-arm statute, 2307.382(A)(1), and that this tenuous connection did not satisfy the minimum contacts required to satisfy due process. The court concluded that Ohio merely served as "a communications and the situs of the execution of the contract and nothing more." The court granted Forbes' motion to dismiss for lack of personal jurisdiction pursuant to Civ. R. 12(B)(2), and dismissed LaFarge's complaint.
 {¶ 9} LaFarge now appeals, raising one assignment of error:
 {¶ 10} "The trial court erred in granting Forbes's [sic] motion to dismiss for lack of personal jurisdiction."
 {¶ 11} In its sole assignment of error, LaFarge argues that the court erred in granting Forbes' motion to dismiss because Forbes' actions constituted "transacting business in the State of Ohio" by the very facts of the transaction. That is, Forbes called Mr. Page at LaFarge's Lordstown office via telephone three or four times, and the parties executed the agreement at the Lordstown office, which contains an Ohio choice of law provision. LaFarge further argues that personal jurisdiction over LaFarge comports with due process considerations as these factors are sufficient to satisfy the requirements of minimum contacts required by the 14th Amendment of the United States Constitution.
 {¶ 12} Personal Jurisdiction — A Two-Step Test
 {¶ 13} We review whether a trial court has personal jurisdiction over a defendant as a matter of law de novo. Synder Computer Systems v.Stives, 175 Ohio App.3d 653, 2008-Ohio-1192, ¶ 11. When determining whether a state court has personal jurisdiction over a nonresident defendant, courts are obligated to engage in a two-step *Page 5 
analysis, and thus determine: "(1) whether a state's `long-arm' statute and applicable rule of civil procedure confer personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law under theFourteenth Amendment to the United States Constitution." Huskin v.Pappse (June 30, 2000), 11th Dist. No. 99-T-0069, 2000 Ohio App. LEXIS 2992, 4-5.
 {¶ 14} Minimum Contacts
 {¶ 15} "In order to satisfy the first prong of the foregoing test, a plaintiff is required to show that the nonresident defendant has had sufficient minimum contacts with this state so as to justify the granting of personal jurisdiction to the trial court. R.C. 2307.382(A)(1) essentially provides that such minimum contacts have been established if the cause of action against the defendant is based upon the transaction of any business in the state. Consistent with this, Civ. R. 4.3(A)(1) states that out-of-state service of process can be made upon a nonresident defendant who has transacted business within the state." Nationwide Mutual Insurance Co. v. Baker (1995),105 Ohio App.3d 336, 339.
 {¶ 16} "In interpreting both the statute and the rule, the Supreme Court of Ohio has held these provisions should be applied in a liberal manner:
 {¶ 17} `It is clear that R.C. 2307.382(A)(1) and Civ. R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who are transacting any business in Ohio. "Transact" as defined by Black's Law Dictionary * * * "* * * means to prosecute negotiations; to carry on business; to have dealings * * *. The word embraces in its meaning the carrying on or prosecution of business negotiations, but it is a broader *Page 6 
term than the word `contact' and may involve business negotiations which have been either wholly or partly brought to a conclusion * * *.'" (Italics omitted.) Id. at 339-340, quoting Kentucky Oaks Mall Co. v.Mitchell's Formal Wear, Inc. (1990), 53 Ohio St.3d 73, 75.
 {¶ 18} "While appellants are entitled to have the factual allegations sustaining personal jurisdiction construed in their favor, they must nevertheless first plead or otherwise make a prima facie showing of jurisdiction over appellee." Huskin at 6.
 {¶ 19} In this case, LaFarge has failed to make a prima facie showing of jurisdiction over Forbes sufficient to satisfy R.C. 2307.382(A)(1) and Civ. R. 4.3(A)(1), as there have been no "business or dealings", or even "business negotiations" that involve the state of Ohio. LaFarge relies on the fact that the parties physically executed the contract in Ohio, and on the basis that several telephone calls were made both before and after the execution of the contract. The phone calls, however, were made by Mr. Forbes from Pennsylvania to discuss the slag removal and possible purchase of the Pulaski slag facility in Pennsylvania that is owned by LaFarge. Forbes made these inquiries of Mr. Page at LaFarge's Lordstown Office. LaFarge further contends that because the contract contains an Ohio choice of law provision, clearly any ensuing litigation was contemplated by the parties to take place in Ohio.
 {¶ 20} That Ohio would be the forum for any ensuing litigation, however, is dubious under these circumstances. Forbes is a foreign business entity, formed under the laws of Pennsylvania and not licensed to do business in Ohio. More fundamentally, the contract was for the purchase of slag that was also located in Pennsylvania, by Forbes, from LaFarge's Pulaski slag facility. It should be noted that LaFarge is also a *Page 7 
foreign entity, formed under the laws of Maryland, and although LaFarge is licensed to do business in Ohio, this fact is certainly not determinative to the determination of whether Forbes was "transacting" business in Ohio in this instance. There is no benefit to, nor does any aspect of this agreement concern Ohio.
 {¶ 21} Thus, we have a foreign corporation purchasing a product from another state from another foreign corporation, which happens to have an office in Ohio. The very terms of the contract prohibit Forbes from purchasing slag in three Ohio counties, Trumbull, Mahoning, and Columbiana respectively; and explicitly provides that Forbes must purchase slag only from LaFarge's Pulaski site in Pennsylvania. There is quite simply no business of any type taking place in or concerning Ohio under the parties' agreement.
 {¶ 22} The fact that the parties contacted one another via telephone and executed the agreement at LaFarge's Lordstown Office is not sufficient to create a "substantial connection" with Ohio in order to declare that Forbes was "transacting business" under these circumstances. See Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462.
 {¶ 23} In Huskin, the appellee's only contact with Ohio consisted of telephone calls, faxes, and mailings. We determined that "[f]requent mail and telephone communications between two companies in different states are considered commercial contacts and are not "purposefully directed" to Ohio in a way that would lead the foreign corporation to realize that it could be haled into an Ohio Court." Id. at 6.
 {¶ 24} Choice of Law Provision *Page 8 
 {¶ 25} Likewise, a choice of law provision is insufficient to establish sufficient contacts in the forum state. It is merely a factor to be considered. In Caphalon v. Rowlette (6th Cir. 2000), 228 F.3d 718, the United States Court of Appeals for the Sixth Circuit was confronted with similar circumstances, and in affirming the trial court's dismissal for lack of personal jurisdiction, reviewed the United States Supreme Court ruling in Burger King Corp., stating: "a choice of law provision, though alone insufficient to establish jurisdiction, can `reinforce [a] deliberate affiliation with the forum State and the reasonable forseeability of possible litigation there.'" Id. at 723, citingBurger King Corp. at 482. Thus, even though the appellee in that case "was on notice that the contract was to be governed by Ohio law," as here, the appellee "did not make a deliberate affiliation with that state nor could it reasonably foresee possible litigation there." Id.
 {¶ 26} Indeed, the very breach alleged, the failure of LaFarge to make payment on the remaining slag at the Pulaski facility, arises in Pennsylvania, where the site is located. Thus, the trial court properly found that Ohio was a mere situs for telephone communications and for executing the contract, correctly concluding that "Forbes contacts are tenuous, random, and not purposefully directed at Ohio."
 {¶ 27} But for LaFarge's office in Lordstown, no contact of any kind would have been made in Ohio, as Forbes is a foreign business entity, not licensed to do business in Ohio, with its principal place of business in Pennsylvania. The contract itself concerned the purchase of slag from LaFarge's slag facility in Pennsylvania. LaFarge is a foreign corporation, and although licensed to do business in Ohio, the substance of the contract does not relate to any aspect of LaFarge's business, save a prohibition *Page 9 
against Forbes marketing slag removed from the Pennsylvania reserve in three Ohio counties.
 {¶ 28} Since it was not established that the trial court had jurisdiction over Forbes under either the statute or the rule, it is unnecessary to address whether the assumption of jurisdiction would have violated Forbes' due process rights. Nationwide at 341.
 {¶ 29} Thus, we find that LaFarge's assignment of error is without merit.
 {¶ 30} The judgment of the Trumbull Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs,
 COLLEEN MARY O'TOOLE, J., dissents. *Page 1