[Cite as *Magnum Asset Acquisition, L.L.C. v. Green Energy Technologies, L.L.C.*, 2022-Ohio-2247.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MAGNUM ASSET ACQUISITION, LLC

    Appellant

    v.

GREEN ENERGY TECHNOLOGIES,
LLC, et al.

    Appellees

C.A. No.     29789

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2019-11-4238

DECISION AND JOURNAL ENTRY

Dated: June 30, 2022

TEODOSIO, Judge.

{¶1} Magnum Asset Acquisition, LLC, appeals the judgment of the Summit County Court of Common Pleas dismissing its complaint for lack of personal jurisdiction. We affirm.

I.

{¶2} Magnum Asset Acquisition, LLC, ("Magnum Asset") is an Ohio corporation located in Hudson, Ohio. Green Energy Technologies, LLC, The Green Energy Group, LLC, and Green Leaf Holdings, LLC (collectively "Green Energy") are Michigan companies involved in providing alternative energy technology. The parties were initially introduced to each other by a third party: Wes Fannin. Magnum Asset alleged Mr. Fannin was acting as an agent of Green Energy. Green Energy denied this allegation and asserted that Mr. Fannin was an outside sales associate.

{¶3} In 2019, Green Energy purchased "lighting controls" from Magnum Asset for installation at two separate project sites in Michigan. The equipment was sent from Ohio to

Michigan in multiple shipments, with payments being mailed from Michigan to Ohio. Technicians from Ohio travelled to Michigan to assist with installation and repair and also advised Green Energy technicians in Michigan by telephone. In November 2019, Magnum Asset filed its complaint for breach of contract in the Summit County Court of Common Pleas, alleging that Green Energy had failed to pay for products and services. Early on, the case was removed to the United States District Court for the Northern District of Ohio, Eastern Division, but later remanded back to the Summit County Court of Common Pleas.

{¶4} Green Energy subsequently filed a motion to dismiss for lack of personal jurisdiction, with Magnum Asset responding in opposition and the matter being set for an evidentiary hearing. After a two-day video conference hearing, the trial court issued its judgment granting the motion to dismiss for lack of personal jurisdiction. Magnum Asset now appeals, raising a single assignment of error.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS' CIV.R. 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.

{¶5} Magnum Asset argues the trial court erred in granting Green Energy's motion to dismiss for lack of personal jurisdiction. We disagree.

{¶6} Whether personal jurisdiction exists is a question of law that is reviewed de novo. *Kauffman Racing Equip, L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, ¶ 27. *Accord Goodrich Corp. v. Polyone Corp.*, 9th Dist. Summit No. 27691, 2016-Ohio-1068, ¶ 12. A de novo review requires an independent examination of the trial court's decision without deference to the underlying decision. *Ohio Receivables, L.L.C. v. Landaw*, 9th Dist. Wayne No. 09CA0053, 2010-Ohio-1804, ¶ 6.

{¶7} This Court applies a two-part inquiry when deciding whether an out-of-state defendant is subject to personal jurisdiction in an Ohio court. *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, ¶ 12. "First, the court must determine whether the defendant's conduct falls within Ohio's long-arm statute or the applicable civil rule." *Id.* "If it does, then the court must consider whether the assertion of jurisdiction over the nonresident defendant would deprive the defendant of due process of law under the Fourteenth Amendment to the United States Constitution." *Id.* The burden of proving that personal jurisdiction exists rests with the plaintiff. *ComDoc v. Advance Print Copy Ship Ctr.*, 9th Dist. Summit No. 24212, 2009-Ohio-2998, ¶ 3. Upon the filing of a motion to dismiss for lack of personal jurisdiction, the trial court has the discretion to rule upon the motion with or without a hearing. *See Giachetti v. Holmes*, 14 Ohio App.3d 306, 307 (8th Dist.1984). When an evidentiary hearing is held, the plaintiff must prove by a preponderance of the evidence that jurisdiction exists. *MJM Holdings Inc. v. Sims,* 9th Dist. Summit No. 28952, 2019-Ohio-514, ¶ 9.

{¶8} Ohio's long-arm statute, R.C. 2307.382, sets forth nine specific acts by a defendant which give rise to personal jurisdiction. Civ.R. 4.3(A) is a complementary rule governing service of process upon a person outside of Ohio which parallels the long-arm statute. *See Kauffman Racing Equip., L.L.C.*, 126 Ohio St.3d 81, 2010-Ohio-2551, at ¶ 35. In support of personal jurisdiction, Magnum Asset relies upon R.C. 2307.382(A)(1), which provides: "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's * * * [t]ransacting any business in this state * * *."

{¶9} The Ohio Supreme Court has recognized "transacting any business" as "a broad statement of jurisdiction" and questions concerning the application of R.C. 2307.382(A)(1) are resolved upon "highly particularized fact situations, thus rendering any generalization

unwarranted." *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 185 (1994). Thus, a court must determine, case-by-case, whether a nonresident is transacting business in the state of Ohio. *Id.* at 185.

{¶10} As we have previously stated, the term "transact" as utilized in the phrase "transacting any business" means "to carry on business" and "to have dealings" and is broader than the word "contract." *Morgan Adhesives Co. v. Sonicor Instrument Corp.*, 107 Ohio App.3d 327, 332 (9th Dist.1995), quoting *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236 (1994). "Transacting business in Ohio does not require the nonresident party to have a physical presence in Ohio." *MJM Holdings Inc.* at ¶ 14, citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 76 (1990). "One factor that may be considered, but is not determinative as to transacting business, is whether the nonresident initiated the business dealing." *MJM Holdings Inc.* at ¶ 14, citing *Barnabus Consulting Ltd. v. Riverside Health Sys., Inc.*, 10th Dist. Franklin No. 07AP-1014, 2008-Ohio-3287, ¶ 15. "Another factor relevant to transacting business is whether the parties conducted their negotiations and communications in Ohio or based upon terms affecting Ohio." *Id.*, citing *Diversa, Inc. v. Pennsylvania Substance Abuse Information Ctr.*, 11th Dist. Portage No. 95-P-0028, 1996 WL 200629, *4 (Mar. 29, 1996) (finding that a nonresident transacted business in Ohio for numerous reasons, including that "the negotiations were carried on by mail and telephone with [the resident] at its office in Kent, Ohio [and] the signed contracts were sent to [the resident] in Ohio"). "If the parties negotiated in Ohio with provisions affecting Ohio, the nonresident transacted business in Ohio, provided there is some 'continuing obligation that connects the nonresident defendant to the state or some terms of the agreement that affect the state.'" *MJM Holdings Inc.* at ¶ 14, quoting *Russian Collections, Ltd. v. Melamid*, S.D.Ohio No. 2:09-cv-300, 2009 WL 4016493, *3 (Nov. 18, 2009).

**{¶11}** If it is determined that the defendant is subject to Ohio's long-arm statute, we proceed to ask whether the assertion of personal jurisdiction by an Ohio court comports with the Due Process Clause of the Fourteenth Amendment. *Kauffman Racing Equip., L.L.C.*, 126 Ohio St.3d 81, 2010-Ohio-2551, at ¶ 45.

**{¶12}** In order to comport with the due process requirement, a defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). "This due process requirement may be satisfied where the forum state has either specific or general jurisdiction over a nonresident." *State ex rel. DeWine v. 9150 Group, L.P.*, 9th Dist. Summit No. 25939, 2012-Ohio-3339, ¶ 18, citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-415 (1984), fns. 8 and 9. In the case sub judice, we are concerned with the issue of specific jurisdiction.

**{¶13}** "Specific jurisdiction applies when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Kauffman Racing Equip., L.L.C.* at ¶ 47, quoting *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414, fn. 8. Three requirements must be met to establish specific jurisdiction:

> First, defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*9150 Group, L.P.*, at ¶ 19, quoting *Southern Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968). The first two requirements establish a defendant's "minimum contacts" with the forum. *9150 Group, L.P.* at ¶ 19. The last requires the court to determine if exercise of

jurisdiction over the defendant comports with the ideas of "fair play and substantial justice." *Id.*, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King, Corp.* at 475, fn. 18.

{¶14} The first requirement of "purposeful availment" looks to "whether the defendant purposely availed himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Kauffman Racing Equip., L.L.C.*, 126 Ohio St.3d 81, 2010-Ohio-2551, at ¶ 51. "Purposeful availment" is present when the defendant's contacts with the forum state proximately result from actions by the defendant that create a "substantial connection" with the forum State. *Id.* Where a defendant has "deliberately" engaged in significant activities within a State or has created "continuing obligations" between itself and residents of the forum, it has manifestly availed itself of the privilege of conducting business there, and because its activities are shielded by "the benefits and protections" of the forum state's laws, it is presumptively not unreasonable to require it to submit to the burdens of litigation in the forum as well. *Burger King Corp.* at 475-476. The defendant's conduct and connection with the forum state must be such that it "should reasonably anticipate being haled into court there" and not solely as a result of "random," "fortuitous," or "attenuated" contacts. *Kauffman Racing Equip., L.L.C.* at ¶ 51, quoting *Burger King, Corp.* at 474-475. This likewise ensures the defendant will not be subjected to another state's jurisdiction based on the unilateral activity of another party or a third person. *Kauffman Racing Equip., L.L.C.* at ¶ 51. "Courts must examine the quality and nature of all the contacts a nonresident defendant makes with the forum during the course of the parties' contractual relationship." (Emphasis deleted.) *Barnabus Consulting Ltd.*, 2008-Ohio-3287, at ¶ 22, citing *Burger King, Corp.* at 479.

{¶15} The second prong requires the plaintiff's cause of action arise from the defendant's contacts with Ohio. *Kauffman Racing Equip., L.L.C.* at ¶ 70. "'If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts.'" *Id.*, quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996). The cause of action needs to have a substantial connection with the defendant's in-state activities. *Kauffman Racing Equip., L.L.C.* at ¶ 70.

{¶16} "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.,* 471 U.S. at 476, quoting *International Shoe Co.,* 326 U.S. at 320. The third prong thus requires that there be a substantial connection between the forum state and the nonresident defendant's acts or the consequences of the acts in order to make the exercise of jurisdiction over the defendants reasonable. *MJM Holdings Inc.* at ¶ 42. "If the first two prongs are satisfied, there is an inference the third prong is also satisfied." *Id.*, citing *Kauffman Racing Equip., L.L.C.* at ¶ 71. "Only in unusual circumstances is the third element left unsatisfied, and it is the burden of the defendant to show it." *MJM Holdings Inc.* at ¶ 42.

{¶17} The factors to consider under this prong include: "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King Corp.* at 477, quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

**{¶18}** In the case sub judice, the trial court determined both that it did not have jurisdiction under the long-arm statute and that minimum contacts were not met to comport with the due process requirements. We note, however, that its analysis somewhat conflates the two issues, reflecting both the inherent difficulty in distinguishing the nuances between the two paths and the occasionally convoluted analyses arising out of the appellate court districts on this issue.

**{¶19}** As we have observed, "transacting any business" is a broad statement of jurisdiction that is, however, limited by the concerns of due process. *See U.S. Sprint Communications Co. Ltd. Partnership*, 68 Ohio St.3d at 185; *Natl. Court Reporters, Inc. v. Rebecca N. Strandberg & Assocs.*, 8th Dist. Cuyahoga No. 92035, 2009-Ohio-2271, ¶ 8. Therefore, even assuming that Green Energy had been "transacting business" in Ohio, the exercise of jurisdiction would still need to comport with due process. It is with that understanding that we begin our analysis by examining whether the due process requirement had been met.

**{¶20}** In its judgment entry, the trial court first determined that Mr. Fannin had acted as an independent contractor and not as an agent on the behalf of either company. It then conducted an analysis of the contacts between Magnum Asset and Green Energy, finding as follows:

> Based upon the evidence presented, all calls, texts and emails related to the projects in Michigan. Magnum did not present any evidence that it was requested to provide lighting controls for any projects in Ohio. All of the lighting controls were shipped out of Ohio to the sites in Michigan. Likewise, when the lighting controls did not operate properly, Magnum employees went to Michigan in order to make the repairs. At no point did anyone from Green Energy come to Ohio regarding these two specific projects.
>
> The only connection Green Energy has with Ohio is payment for the lighting controls and incidental emails, texts and phone calls regarding their purchase and installation. The testimony and evidence presented during the hearing did not explain any contacts Green Energy allegedly had in Ohio other than purchasing the goods to be installed in Michigan. Green Energy's "contact" consisted of arranging for the purchase of the lighting controls to be installed in Michigan. When the lighting controls allegedly malfunctioned, Magnum employees went to Michigan.

No one from Green Energy ever came to Ohio. Although phone calls, text messages, and emails were sent to individuals at Magnum in Ohio, it was regarding the projects located in Michigan. In addition, the lighting controls were shipped to and installed in Michigan. Finally, Magnum employees went to Michigan to either help install or repair the lighting controls. The testimony revealed that Green Energy has no presence in Ohio, nor does it appear they have purchased any other lighting controls from Magnum other than for those two projects.

The trial court went on to conclude that the evidence did not establish the minimum contacts necessary to invoke specific jurisdiction.

{¶21} Magnum Asset points to several factors in support of its contention that the trial court erred in finding there was no personal jurisdiction in Ohio. First, it argues that the trial court incorrectly assessed the number of contracts between the parties, stating that if the trial court had used standards set forth in the Uniform Commercial Code, every purchase order and shipment would have constituted a separate contract, and the actual number of contracts would have then been "18 plus." Magnum Asset further argues that the parties intended a long-term relationship because they contemplated partnering on a number of potential future projects in Michigan.

{¶22} Magnum Asset raises several other issues in its argument in support of finding personal jurisdiction, noting that its Ohio technicians provided training to Green Energy technicians in Michigan via telephone and that it sent its Ohio technicians to Michigan on four occasions to help resolve installation problems. Magnum Asset also points to the multiple payments made to it by Green Energy, as well as multiple telephone calls and e-mails made by Green Energy to Magnum Asset. They further argue that it was Wes Fannin who initiated contact with Magnum Asset regarding Green Energy, and that he did so on behalf of Green Energy.

{¶23} Magnum Asset points to *Natl. Court Reporters, Inc.*, 2009-Ohio-2271, for the proposition that a month-long course of dealing is distinguishable from a one-time event for the purposes of establishing personal jurisdiction. Although the Court in *Natl. Court Reporters, Inc.*

determined that a month-long course of dealing was "business negotiations" that constituted "transacting any business" for the purposes of the Ohio long-arm statute, the Court concluded that there was not personal jurisdiction under a due process analysis because the plaintiff did not establish that the defendant had a "substantial connection" with Ohio. *Id.* at ¶ 8-10.

{¶24} In previous cases, this Court has examined whether there is personal jurisdiction in Ohio for an out-of-state buyer ordering goods from an Ohio seller. We have noted that "[s]everal federal courts have declined to find that a defendant's mere purchase of goods from another state creates minimum contacts with that state for purposes of personal jurisdiction and have distinguished situations where the nonresident defendant is a buyer, as opposed to a seller." *Med Express v. Univ. of Colorado Denver*, 9th Dist. Medina No. 14CA0024-M, 2015-Ohio-144, ¶ 23, quoting *Austin Miller Am. Antiques, Inc. v. Cavallaro*, 10th Dist. Franklin No. 11AP–400, 2011-Ohio-6670, ¶ 16. *Accord Novar Controls Corp. v. Brott Mechanical, Inc.*, 9th Dist. Summit No. 13959, 1989 WL 69704, *2 (June 14, 1989) ("The ordering of goods from an Ohio resident by a non-resident, where the goods are to be shipped to the non-resident by the Ohio resident, does not constitute the transaction of business in Ohio by the non-resident who ordered the goods."). "The mere existence of a contract between the defendant and a forum resident does not provide the requisite contacts and 'use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the "minimum contacts" required by due process.'" *Med Express* at ¶ 23, quoting *Cavallaro* at ¶ 16.

{¶25} In *Med Express*, this Court concluded that although a buyer in Colorado contacted an Ohio entity and negotiated and entered into an agreement for the purchase of a good, the case involved an isolated product purchase and the University of Colorado's contacts with Ohio in

relation to the negotiation, purchase, and return of the purchased diagnostic equipment did not rise to the level of a "substantial connection" with Ohio to allow the University to "reasonably anticipate being haled into court [in Ohio.]" *Med Express* at ¶ 24-25, quoting *Burger King*, *Corp.*, 471 U.S. at 474–75. *Accord Cavallaro* at ¶ 21 (concluding that where a Rhode Island buyer initiated contact with an Ohio seller for two sales transactions with payment made to the Ohio corporation, the buyer did not purposefully avail himself of doing business in Ohio and had insufficient contact to justify the exercise of personal jurisdiction); *McKinley Machinery, Inc. v. Acme Corrugated Box Co.*, 9th Dist. Lorain No. 98CA007160, 2000 WL 961300, *3 (July 12, 2000) (concluding that a Pennsylvania buyer did not purposefully avail itself of acting in Ohio where it ordered a product from an Ohio company that was shipped to and installed in Pennsylvania, the contract was executed in Pennsylvania, and the contract was not part of long-term dealings within Ohio).

**{¶26}** The cases set forth above, including the very case cited by Magnum Asset, concluded that their respective defendants did not have the "substantial connection" with Ohio necessary to comport with due process. See *Natl. Court Reporters, Inc.*, 2009-Ohio-2271, at ¶ 8-10; *Med Express* at ¶ 24-25; *Cavallaro* at ¶ 21; *McKinley Machinery, Inc.* at *3. Recognizing that these cases are not factually identical to the case sub judice, we nonetheless find these cases to be instructive in consideration of the facts now before us.

**{¶27}** Although there were multiple shipments made to Green Energy in Michigan from Magnum Asset in Ohio, it is undisputed that the shipments involved only two projects between the parties. Potential future projects in Michigan had been contemplated, but they had not yet been initiated or agreed upon by the parties. Although Magnum Asset technicians assisted with installation, they did so physically only in Michigan. At no point did anyone from Green Energy

travel to Ohio regarding the project. As we have previously noted, the use of interstate facilities, including telephone, mail, and e-mail, are secondary or ancillary factors and cannot alone provide the "minimum contacts" required by due process. *See Med Express*, 2015-Ohio-144, at ¶ 23, quoting *Cavallaro*, 2011-Ohio-6670, at ¶ 16.

{¶28} With regard to Mr. Fannin, although it is uncontested that he played a role in bringing the parties together, we find no persuasive evidence that he was acting as an agent for Green Energy. Mr. Fannin provided Green Energy with a list of multiple vendors for lighting controls, and Green Energy selected Magnum Asset from that list. It was thus Mr. Fannin who brought Magnum Asset to Green Energy's attention, and it was likewise Mr. Fannin who brought Green Energy to Magnum Asset's attention. Mr. Fannin was neither employed by, nor paid by Green Energy. We note that even if we were to construe Mr. Fannin's role between the parties as having initiated Green Energy's contact with Magnum Asset, that fact alone would not be determinative of "substantial connection." *See Med Express* at ¶ 24-25; *Cavallaro* at ¶ 21.

{¶29} Under the circumstances of this case, we conclude that the Green Energy defendant did not have a "substantial connection" with Ohio that would allow them to "reasonably anticipate being haled into court [in Ohio.]" *See Med Express* at ¶ 24-25, quoting *Burger King, Corp*, 471 U.S. at 474-75. Magnum Asset thus failed to prove by a preponderance of the evidence that personal jurisdiction existed in Ohio. *See MJM Holdings Inc.* at ¶ 9.

{¶30} Magnum Asset's assignment of error is overruled.

## III.

**{¶31}** Magnum Asset's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

DEAN S. HOOVER, Attorney at Law, for Appellant.

RONALD B. LEE, Attorney at Law, for Appellees.