[Cite as *Cincinnati Ins. Co. v. Ohio Logistics, Ltd.*, 2025-Ohio-2830.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY


THE CINCINNATI INSURANCE
COMPANY,

      PLAINTIFF-APPELLANT,

  v.

OHIO LOGISTICS, LTD., ET AL.

      DEFENDANTS-APPELLEES.

CASE NO. 13-25-05


OPINION AND
JUDGMENT ENTRY


Appeal from Seneca County Common Pleas Court
Trial Court No. 23 CV 0173

**Judgment Affirmed and Cause Remanded**

**Date of Decision: August 11, 2025**


APPEARANCES:

    *Michael M. Neltner* **for Appellant**

    *Susan Petro* **for Appellee CGreen LLG**

    *Paul R. Bonfiglio* **for Appellee LCP Group, Inc.**

**WALDICK, P.J.**

{¶1} Plaintiff-appellant, Cincinnati Insurance Company ("CIC"), brings this appeal from the January 10, 2025 judgment of the Seneca County Common Pleas Court dismissing CIC's complaint for a declaratory judgment due to lack of personal jurisdiction over two out-of-state defendants. For the reasons that follow, we affirm the judgment of the trial court, but remand for further proceedings.

*Background*

{¶2} This case stems from a construction accident that occurred in New York.

{¶3} Horseheads Real Property, LLC. ("Horseheads"), is the owner of real property in New York. Horseheads is a Delaware limited liability company with its principal place of business in Horseheads, New York.

{¶4} In March of 2022, Horseheads entered into a contract with Clouse Construction Corp. ("Clouse") wherein Clouse would be a general contractor for the construction of a 461,000 square foot warehouse in New York. Clouse is a construction company with its principal place of business in Seneca County, Ohio. Clouse obtained insurance from CIC, which has its principal place of business in Fairfield, Ohio. As part of the contract, Horseheads and Clouse agreed that any disputes would be litigated in New York State Supreme Court, Chemung County, or in U.S. District Court for the Northern District of New York.

{¶5} Clouse subsequently entered into a contract with defendant-appellee CGreen, LLC ("CGreen"), to provide construction and project management services, including the retention of subcontractors, for the warehouse.[1] Afterward, CGreen entered into a contract with Quantum Impact Steel, LLC ("Quantum") for the erection of the warehouse. Horseheads separately entered into a contract with Quantum to supply the pre-engineered metal building that would become the warehouse.

{¶6} A New York resident named Skylar Butters was an employee of Quantum. In July of 2022, Butters was injured on the project site when a 129,600 square foot section of the partially-erected building collapsed. Butters filed a tort action in Chemung County, New York, against Horseheads, Clouse, and another general contractor on the project, defendant-appellee LCP Group, Inc. ("LCP"). LCP is a New York limited liability company with its principal place of business in New York. Butters alleged that the defendants, *inter alia*, negligently failed to provide a safe place to work.

{¶7} Horseheads also filed an action in Chemung County, New York, naming Clouse as the defendant. Horseheads alleged, *inter alia*, that Clouse was negligent and that Clouse was in breach of contract. Further, Horseheads alleged that pursuant to contract, Clouse was exclusively responsible for the supervision and

---

[1] CGreen was insured by defendant Selective Insurance Company.

coordination of construction on the site, thus Horseheads sought common law indemnification from Clouse.

{¶8} On October 30, 2023, CIC filed an amended complaint for declaratory judgment in Seneca County, Ohio, against Horseheads, Quantum, CGreen, Butters, Clouse, LCP, Selective Insurance, and Ohio Logistics, Ltd. ("OLL"). CIC indicated that they were naming all eight of the defendants in the declaratory judgment action to preclude any future argument that a declaration from the trial court had no application to the defendants in accordance with the Supreme Court of Ohio's holding in *Estate of Heintzelman v. Air Experts, Inc*, 2010-Ohio-3264.

{¶9} In its amended complaint, CIC sought, *inter alia*, a declaration that it had no obligation to provide insurance coverage to OLL or HRP as a result of Clouse's work for OLL and HRP because those entities did not qualify as "insureds" under the CIC insurance or umbrella contracts. CIC sought a declaration that OLL and HRP were not entitled to "additional insured" coverage.

{¶10} Two of the defendants, CGreen and LCP, filed motions alleging that the Seneca County Common Pleas Court did not have personal jurisdiction over them.[2] CGreen filed a Civ.R. 12(B)(2) motion to dismiss for lack of personal jurisdiction, supported by an affidavit of member/manager Christina Pierce. LCP filed a "motion for summary judgment" arguing that it had no ties whatsoever to

---

[2] The remaining parties did not file motions challenging personal jurisdiction.

Ohio and thus the Seneca County Common Pleas Court lacked personal jurisdiction. LCP's motion was supported by the affidavit of Christina Pierce, who was the president of that company.[3] CIC opposed both motions.

**{¶11}** On June 3, 2024, a magistrate filed a decision on the matter, determining that it lacked personal jurisdiction over LCP and CGreen. The magistrate granted LCP and CGreen's motions, and dismissed the complaint with prejudice.

**{¶12}** CIC filed objections to the magistrate's decision and the trial court held a hearing on those objections on September 18, 2024.

**{¶13}** On January 10, 2025, the trial court filed a judgment entry overruling CIC's objections. The trial court granted CGreen and LCP's motions, and dismissed CIC's complaint with prejudice. CIC now brings the instant appeal, asserting the following assignments of error for our review.

### First Assignment of Error

**The Trial Court erred in granting the Defendant/Appellee LCP Group, Inc. ("LCP")'s Motion for Summary Judgment when it ruled that the Court did not have personal jurisdiction over LCP and simultaneously granted Cgreen, LLC ("Cgreen")'s Motion to Dismiss.**

---

[3] Notably, LCP's motion for summary judgment was not the proper "procedural vehicle" to move for dismissal due to lack of personal jurisdiction; however, as the motion for summary judgment was filed by LCP before a responsive pleading, there is little functional difference in the case *sub judice* between an improperly styled "motion for summary judgment" due to lack of personal jurisdiction and a motion to dismiss for lack of personal jurisdiction. *See Ashton Park Apts., Ltd. V. Carlton-Naumann Constr., Inc.,* 2009-Ohio-6335, ¶ 11 (6th Dist.) (holding that while summary judgment was the improper vehicle for a motion to dismiss for lack of personal jurisdiction, an order dismissing a complaint for lack of personal jurisdiction was still proper).

**Second Assignment of Error**

**The Trial Court erred in dismissing the entire case when it was solely presented motions for personal jurisdiction by two of the eight Defendants.**

**Third Assignment of Error**

**The Trial Court erred in dismissing CIC's Amended Complaint with prejudice when it did not address subject matter jurisdiction in its Decision, nor was any issue of subject matter jurisdiction before the Court.**

*First Assignment of Error*

{¶14} In CIC's first assignment of error, CIC argues that the trial court erred by determining that it lacked personal jurisdiction over defendants LCP and CGreen.

Standard of Review

{¶15} "Personal jurisdiction is a question of law that appellate courts review de novo."[4] *Kauffman Racing Equip., L.L.C. v. Roberts*, 2010-Ohio-2551, ¶ 27. When a defendant files a Civ.R. 12(B)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the trial court has

---

[4] We are aware that the trial court granted "summary judgment" in favor of LCP group. Again, summary judgment was not the proper vehicle for challenging personal jurisdiction. *See Ashton Park* at ¶ 11. Nevertheless, both summary judgment and a motion to dismiss would warrant de novo review by this Court. The result before us would be the same whether we applied the "summary judgment" standard, or the standard for a motion to dismiss for personal jurisdiction.

personal jurisdiction over the defendant. *Id*., citing *Fallang v. Hickey*, 40 Ohio St.3d 106, 107 (1988).

Relevant Authority

**{¶16}** "'This Court applies a two-part inquiry when deciding whether an out-of-state defendant is subject to personal jurisdiction in an Ohio Court.'" *Doors On-Line v. Chandra*, 2023-Ohio-2018, ¶ 14 (3d Dist.), quoting *Magnum Asset Acquisition, LLC v. Green Energy Techs., LLC*, 2022-Ohio-2247, ¶ 7 (9th Dist.). First, we must determine whether the defendant's conduct falls within Ohio's long-arm statute, R.C. 2307.382, or the applicable civil rule, Civ.R. 4.3. *Id*. If the statute or rule is satisfied, we must then consider whether the assertion of jurisdiction over the nonresident defendant would deprive the defendant of due process. *Id*.

**{¶17}** The determination of whether an Ohio court has personal jurisdiction over a nonresident defendant, depends on "(1) whether R.C. 2307.382(A), Ohio's long-arm statute, and Civ.R. 4.3 permit the court to assert personal jurisdiction; and, if so, (2) whether bringing the defendant within the jurisdiction of the Ohio courts would violate traditional notions of fair play and substantial justice under the Due Process Clause." *Wedemeyer v. U.S.S. F.D.R. (CV-42) Reunion Assoc*., 2010-Ohio-1502*, ¶ 38 (3d Dist.). "Ohio's long-arm statute, R.C. 2307.382, outlines specific activities that allow Ohio courts to exert personal jurisdiction over a nonresident defendant." *Id.* at ¶ 39. For example, "'R.C. 2307.382 and Civ.R. 4.3(A) allow Ohio

courts to exercise jurisdiction over nonresident defendants in causes of action arising from several enumerated circumstances,' including a nonresident's '[t]ransacting any business in this state.'" *Figley v. Ivex Protective Packaging, Inc.*, 2016-Ohio-3501, ¶ 18 (3d Dist.), quoting *Cincinnati Equine v. Sandringham Farm*, 2016-Ohio-803, ¶ 12 (1st Dist.), and citing R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1).

{¶18} "The Ohio Supreme Court has recognized 'transacting any business' as 'a broad statement of jurisdiction' and questions concerning the application of R.C. 2307.382(A)(1) are resolved upon 'highly particularized fact situations, thus rendering any generalization unwarranted.'" *Magnum*, *supra*, at ¶ 9, quoting *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 185 (1994). "Thus, a court must determine, case-by-case, whether a nonresident is transacting business in the state of Ohio." *Id.*, quoting *U.S. Sprint* at 185.

{¶19} "[T]he term 'transact' as utilized in the phrase 'transacting any business' means 'to carry on business' and 'to have dealings' and is broader than the word 'contract.'" *Magnum* at ¶ 10, quoting *Morgan Adhesives Co. v. Sonicor Instrument Corp.*, 107 Ohio App.3d 327, 332 (9th Dist.1995). "Therefore, the term encompasses more than just the creation of a contract and can include business negotiations." *Ashton Park Apts., Ltd. v. Carlton-Naumann Constr., Inc.*, 2009-Ohio-6335, ¶ 15 (6th Dist.). Furthermore, '[t]ransacting business in Ohio does not

require the nonresident party to have a physical presence in Ohio.'" *Magnum* at ¶ 10, quoting *MJM Holdings Inc. v. Sims*, 2019-Ohio-514, ¶ 14 (9th Dist.). "One factor that may be considered, but is not determinative as to transacting business, is whether the nonresident initiated the business dealing." *Id*.

{¶20} "If it is determined that the defendant is subject to Ohio's long-arm statute, we proceed to ask whether the assertion of personal jurisdiction by an Ohio court comports with the Due Process Clause of the Fourteenth Amendment." *Id.* at ¶ 11. "In order to comport with the due process requirement, a defendant must 'have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Magnum* at ¶ 12, quoting *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). However, if a court decides that jurisdiction is improper under Ohio's long-arm statute, it need not address whether due-process requirements have been met. *Figley*, *supra* at ¶ 17.

Analysis

{¶21} We begin our analysis with a review of the trial court's final judgment entry, which CIC argues is fundamentally flawed. In determining that it lacked personal jurisdiction over CGreen and LCP, the trial court reasoned as follows:

> [T]his Court must first determine whether CGreen and LCP are entities subject to the personal jurisdiction of this Court, and it is clear that they are not.

CIC argues that CGreen and LCP have subjected themselves to Ohio's long-arm jurisdiction by, essentially, working with Clouse (who is based in Ohio), who joined an out-of-state project already in process and sending invoices and/or receiving payments to Clouse's main office in Ohio. CIC also seems to argue that because its contract with Clouse may somehow benefit CGreen and LCP, that CGreen and LCP are somehow involuntarily being forced into Ohio's long-arm jurisdiction. However, there is no evidence or even allegations of any contractual privity between CIC and CGreen or LCP. Neither have voluntarily availed themselves of any benefits in Ohio.

[Trial court discusses and distinguishes case law cited by CIC]

. . . In this case, the out-of-state defendants were thrust into business with Clouse when Clouse placed bids in New York, and became a contractor in a project in which the out-of-state defendants were already involved. A reading of the facts of [the cases discussed by the trial court], when placing Clouse as the out-of-state defendant, makes a compelling argument for proper jurisdiction within New York state.

Preservation of this case in Ohio violates the due process rights of CGreen and LCP. Under the facts of this case, the acts of the [sic] CGreen or LCP, or consequences caused by CGreen or LCP do not have a substantial enough connection with Ohio to make its exercise of jurisdiction over them fundamentally fair. Each of these Defendants necessarily worked with Clouse because Clouse was injected, through no action or omission of either CGreen or LCP, into a construction project in New York state. Neither CGreen nor LCP could reasonably contemplate that the insurance company for Clouse would pull them into an Ohio forum because as admitted and argued by CIC, the law of Ohio is potentially more favorable to CIC than the law of New York.

(Doc. No. 94).

{¶22} CIC contends that there are numerous issues with the trial court's analysis. CIC argues that all that is required to subject CGreen/LCP to Ohio

jurisdiction is for them to conduct "any" business in Ohio, and that the defendants did that by working with Clouse on the New York project. CIC argues that there was correspondence, payments, and business negotiations over seven months in 2023 between defendants and Clouse, which should satisfy R.C. 2307.382 and/or Civ.R. 4.3. CIC also argues that CGreen received payments that were sent from Clouse's Ohio office to New York.

{¶23} CIC contends that the case *sub judice* is nearly identical to our prior decision in *Schnippel Construction, Inc. v. Kreps*, 2002-Ohio-668 (3d Dist.), wherein we determined that a trial court had personal jurisdiction over a non-resident subcontractor. In our prior case, Kreps was an Indiana company that was hired by Schnippel, an Ohio corporation, to work on apartments in Indiana. Kreps submitted its bid to Schnippel in Ohio and was required to submit progress reports to Schnippel in Ohio. Kreps owed a duty of performance to Schnippel. We determined that these facts supported an Ohio court exercising personal jurisdiction over the non-resident defendant.

{¶24} As noted by appellees, there is a critical distinction between this case and the *Kreps* decision. CIC is not a general contractor; rather, Clouse is the general contractor. *Clouse* was the entity that had *some* contact with CGreen and/or LCP. CIC, Clouse's insurance company, had *no* contact with CGreen or LCP. There is no evidence that CIC contracted with either of the defendants or that CIC had any direct communications with the defendants. CIC is a step removed from the parties in

*Kreps*, where there was a direct contractual dispute between a contractor and a subcontractor, not a subcontractor and the insurance company for the general contractor.

**{¶25}** There are other important distinctions between this case and *Kreps*. For example, *Kreps* was an appeal of a denial of a Civ.R. 60 motion, not the grant or denial of a motion to dismiss for lack of jurisdiction. In addition, in this case, Horseheads solicited CGreen's participation and bid in New York, then directed CGreen to provide its bid to Clouse nearly a year after CGreen started working on the project in New York.

**{¶26}** Moreover, the type of contacts that occurred between Clouse (again, not CIC) and defendants included routine "commercial contacts" that Ohio Appellate Courts have indicated are not purposefully directed at Ohio. *See LaFarge N. Am., Inc. v. Forbes*, 2008-Ohio-5864, ¶ 23 (11th Dist.); *Fritz Rumer Cooke Co. v. Todd & Sargent*, 2001 WL 102267, *2 (10th Dist. 2001) ("a finding of minimum contacts does not simply require facts showing 'some contacts' but, instead, requires facts demonstrating 'substantial' connections, 'continuing' obligations, or 'significant' activities."). Here, when looking at Clouse—again, not CIC—and defendants, there are "some contacts." But the contacts were minimal and directed generally to New York rather than to Ohio.

**{¶27}** It is important to emphasize that CGreen and LCP are not registered or licensed in Ohio. They have no business locations in Ohio. They have not done

any work in Ohio, and they have no assets in Ohio. In this case CGreen and LCP were contracted to work on a New York project in New York. Horseheads was the entity that originally brought Clouse to New York, and it was Horseheads that directed CGreen to send a proposal to Clouse's office in Ohio. After a review of all the evidence and the cases cited by the parties[5], we find that Clouse has not established that its conduct falls within the ambit of Ohio's long-arm statute, R.C. 2307.382, or the applicable civil rule, Civ.R. 4.3, particularly given that the injury/accident occurred in New York.

**{¶28}** However, even if we did determine that CIC had satisfied the requirements for long-arm jurisdiction under R.C. 2307.382 or Civ.R. 4.3, we would still have to proceed to analyze whether proceeding with this case in Ohio would violate the due process rights of LCP and CGreen. The trial court determined that, in addition to not meeting the requirements of the statute and civil rule: "Preservation of this case in Ohio violates the due process rights of CGreen and LCP." We agree with the trial court on this separate point as well.

**{¶29}** Again, defendants are not licensed to do business in Ohio. They do not have an Ohio office. They did not solicit business from Ohio. All the work in this project was done in New York. The underlying tort claim was in New York. Plus,

---

[5] CIC cites numerous cases in its brief in support of its position such as *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73 (1990). Questions related to personal jurisdiction, minimum contacts, and transacting "any" business are inherently fact-based questions that require a case-by-case determination. *U.S. Sprint Communications Co. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 185 (1994). *Kentucky Oaks* for example has immediately distinguishable facts in that, like *Schnippel*, it involved the direct parties to a contract. Further, there were payments directed to Ohio in *Kentucky Oaks*.

Clouse's contract had a provision indicating any disputes would be litigated in New York, whether in state or federal court. It seems fundamentally unfair to require two defendants who have almost no connection to Ohio to appear and defend an action that they could not have reasonably anticipated being in an Ohio court. *See Doors On-Line v. Chandra*, 2023-Ohio-2018 (3d Dist.). For all of these reasons, CIC's first assignment of error is overruled.

*Second Assignment of Error*

{¶30} In CIC's second assignment of error, CIC contends that the trial court erred by dismissing the "entire case" when the trial court was solely presented motions related to personal jurisdiction by two of the eight named defendants.

Analysis

{¶31} In the trial court's final entry, the trial court stated that "CIC's Amended Complaint, filed on October 30, 2023 is **DISMISSED WITH PREJUDICE**." (Emphasis sic.)

{¶32} Notably, after the trial court filed its final entry, CIC filed a "motion for clarification" seeking to have the trial court indicate whether it actually meant the entire complaint was dismissed, including the counts against the six defendants who did not move for dismissal of the complaint. However, before the trial court could respond to the motion for clarification, CIC filed a notice of appeal and the trial court indicated it was divested of jurisdiction.

{¶33} We agree with CIC that the trial court needs to clarify its position regarding the other defendants who did not move for dismissal of this case. As the trial court conducted no analysis related to the other defendants in its final judgment entry, we presume the trial court only meant to dismiss the complaint against the specific defendants discussed herein. However, to the extent that the trial court dismissed the entire action, we would find that it is erroneous, at least inasmuch as the other defendants have not moved for dismissal and there is no analysis indicating this case cannot proceed without LCP and CGreen.

{¶34} Nevertheless, we emphasize that any error by the trial court does not impact LCP or CGreen. Thus we sustain CIC's second assignment of error, but only as it relates to the defendants other than CGreen and LCP.

*Third Assignment of Error*

{¶35} In its third assignment of error, CIC argues that the trial court erred by dismissing the matter on the basis of "subject matter jurisdiction." However, as noted by the appellees, after a plain reading of the trial court's judgment entry, the only mention of subject matter jurisdiction by the trial court was when the trial court was reciting the background of the case. The trial court quoted the magistrate's decision, wherein *the magistrate* made a finding related to subject matter jurisdiction. After the trial court recited the procedural history of the case, the trial court moved to its "law and application" section, wherein subject matter jurisdiction

was not mentioned and was not the basis of any finding leading to dismissal. As the trial court did not make any specific finding regarding subject matter jurisdiction, CIC's assignment of error is overruled.

*Conclusion*

**{¶36}** Having found no error prejudicial to CIC with respect to defendants-appellees CGreen and LCP, CIC's assignments of error are overruled. However, this cause is remanded for the trial court to continue the case against the remaining defendants.

***Judgment Affirmed and Cause Remanded***

**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

Case No. 13-25-05

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for further proceedings and execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

---
Juergen A. Waldick, Judge

---
William R. Zimmerman, Judge

---
John R. Willamowski, Judge

DATED:
/jlm